MICHAEL MORROW *v.* RUSSELL C. ROBERTS, JUDGE

5-5569                                                    467 S. W. 2d 393

Opinion delivered May 31, 1971

*Rose, Barron, Nash, Williamson, Carroll & Clay,* for petitioner.

*Ray Thornton,* Attorney General; *Milton R. Lueken,* Asst. Atty. Gen., for respondent.

Lyle Brown, Justice. Petitioner Michael Morrow was found in contempt of the Faulkner Circuit Court on two separate counts. He was sentenced to fifteen days in jail and fined thirty dollars for failure to respond to a subpoena. When Morrow was brought before the court on that charge he was instructed to permit his hair to be cut. He declined and was sentenced to thirty days on the county penal farm. The sentences were to run consecutively and it was provided that he could purge himself of the second sentence if during the first fifteen day period he permitted his hair to be cut. The following day this court ordered Morrow released under bond based on his petition for a writ of habeas corpus. On appeal Morrow contends that he was not guilty of contempt on either charge and, alternatively, that the punishment was excessive.

We have before us a complete transcript of the record and proceedings incident to petitioner's conviction. "Consequently, we must review the record to determine the propriety of the trial court's action." *Widmer v. State,* 243 Ark. 952, 422 S. W. 2d 881 (1968). In making that review we begin with the proposition that this is a procedure for criminal contempt and the proof of guilt must be shown beyond a reasonable doubt. *Blackard v. State,* 217 Ark. 661, 232 S. W. 2d 977 (1950). We examine the record for substantial evidence.

1. *Response to the Subpoena.* Morrow, a resident of Little Rock, was served with a subpoena on December 2, 1970, to appear in the Faulkner Circuit Court, Conway, on December 7 to testify on behalf of the plaintiff in the case of State v. Pruitt. Morrow did not report on the date ordered. He was brought before the court on December 10 and punishment was imposed. Morrow challenges the punishment for failure to report on two grounds. First, he says he called the office of the deputy prosecuting attorney on the morning of December 7 and advised his secretary that he, Morrow, had

no transportation; that he was told by the prosecutor's secretary to stand by for further instructions; and that he waited at home for some four hours and heard nothing. The first weakness in petitioner's position is that he waited some four days and until the day of court when he was to report at 9:00 a.m. before explaining his transportation problem. Additionally, the court may have correctly concluded that other modes of travel were available for the short distance of some twenty-five miles from Little Rock to Conway. Secondly, petitioner contends that because of a stipulation between the parties his testimony was not needed. We do not so interpret the record.

Mr. Pruitt was being tried for alleged embezzlement while employed in the business office of State College of Arkansas. Scores of students had been subpoenaed (Morrow was a former student) by the State to testify that they paid stated amounts as entrance fees, whether they paid in person or by mail, whether they received a receipt, and whether they could identify the college official with whom they dealt. Counsel for both parties interviewed all the students and former students who were present and stipulated what their answers would be to the enumerated questions. Thereupon those students were released. They could not stipulate as to petitioner's testimony because he was not present. His absence was reported to the court and an officer was sent to Little Rock with an attachment. Shortly after noon counsel for the State and for Pruitt went to the jail where petitioner had in the meantime been incarcerated and obtained from him all information which answered the recited questions. It was at that time that a stipulation was made as to petitioner's testimony which eliminated the necessity for his taking the witness stand. It must be noted that petitioner's presence was needed on December 7, the opening day of the trial, and again on the morning of December 10. Furthermore, the prosecutor testified that petitioner's presence was necessary to obtain the answers to enumerated questions before his presence on the witness stand could be waived. We are unable to say the court was in error in imposing punishment for failure to respond to the subpoena.

This brings us to a consideration of the amount of punishment imposed. It constitutes criminal contempt for one to willfully disobey any process or order of the court. Ark. Stat. Ann. § 34-901 (Repl. 1962). Section 34-902 fixes a maximum fine of fifty dollars and imprisonment not to exceed ten days. However, that section has been held not to be a limitation on the power of the court to inflict punishment for disobedience of process. *Spight* v. *State,* 155 Ark. 26, 243 S. W. 860 (1922). Be that as it may, petitioner was nineteen years of age at the time, and according to his unrefuted testimony, he did make some effort to notify the authorities of his transportation problem. Further, his failure to respond caused no delay in the trial. Under the circumstances we think a fine of thirty dollars and twenty-four hours in jail (which he has already served) constitute sufficient punishment.

2. *Refusal to Have Hair Cut.* When the court imposed penalty on the first count appellant was ordered committed and the sheriff was directed to get appellant a haircut. Later in the day petitioner was brought before the court for a hearing. With regard to failure to get a haircut this colloquy occurred:

COURT: And when you were brought before the court earlier in the day it was an order of this court that you have a haircut. It is my understanding that you refused, is that correct?

MORROW: Yes, sir. May I state the grounds, or would there be objections?

COURT: I care not. Go ahead.

MORROW: Your honor, I am employed as a musician, and I find it more or less a requirement to have my hair like I wear it.

Thereupon petitioner was found guilty of contempt and received a second sentence. The law of contempt is discussed at length in *Freeman* v. *State,* 188 Ark. 1058,

69 S. W. 2d 267 (1934). There, in a unanimous opinion, our court set out these principles as encompassing the rules of contempt:

(1) That the power of punishment for contempt is independent of statutory authority, being inherent in and an immemorial incident of judicial power, its conclusions to be reached and judgments found without the intervention of a jury;[1] (2) that, because of this extraordinary and inherent power, the administration of which is entrusted to the conscience of the court alone, the power should never be exercised except in those cases where the necessity is plain and unavoidable if the authority of the courts is to continue; (3) that courts entertain proceedings for contempt for two purposes, one to preserve the power and dignity of the court and to punish for disobedience of orders, and the other to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found the parties to be entitled.

The record before us is devoid of any showing that the appearance of the petitioner created a "plain and unavoidable necessity" that he be punished in order to protect the authority of the court. Nor is there any evidence of an affront to the dignity of the court. If his appearance created any disturbance whatsoever it is not revealed in the record.

A court rule prohibiting the appearance of parties and witnesses appearing in court in other than the ordinary short haircuts has never been litigated in any of the appellate courts. At least no such case has come to our attention. However, there have been a number of so-called "haircut cases" in the inferior federal courts involving school attendance. Those cases, although not controlling here, are indicative of a definite legal trend. A typical case, and one much publicized, is that of

---

[1] A jury trial is now required in serious (as opposed to petty) criminal contempts. *Bloom* v. *Illinois*, 391 U. S. 194 (1968).

*Richards* v. *Thurston,* 424 F. 2d 1281 (First Circuit, Mass. 1970). That case held that the suspension of a high school student whose hair fell "loosely about the shoulders" violated the student's personal liberty guaranteed him by the due process clause of the Fourteenth Amendment. There we find this statement:

> We do not say that the governance of the length and style of one's hair is necessarily so fundamental as those substantive rights already found implicit in the "liberty" assurance of the Due Process Clause, requiring a "compelling" showing by the state before it may be impaired. Yet "liberty" seems to us an incomplete protection if it encompasses only the right to do momentous acts, leaving the state free to interfere with those personal aspects of our lives which have no direct bearing on the ability of others to enjoy their liberty. As the court stated in *Union Pacific Railway Co.* v. *Botsford,* 141 U. S. 250 (1891):

> "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, 'The right to one's person may be said to be a right of complete immunity: to be let alone.'"

> Indeed, a narrower view of liberty in a free society might, among other things, allow a state to require a conventional coiffure of all its citizens, a governmental power not unknown in European history.

The cause is affirmed in part and reversed in part with directions to modify the punishment for failure to respond to the subpoena and to quash the contempt finding on the second count we have discussed.