Felver A. ROWELL, Jr. *v.* STATE of Arkansas

CR 82-130                                              644 S.W.2d 596

Supreme Court of Arkansas
Opinion delivered January 24, 1983

Appellant, *pro se; John Wesley Hall, Jr.,* of counsel.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. In the course of a criminal trial in the Conway Circuit Court the present petitioner, Felver A. Rowell, Jr., a lawyer in the case, was fined $25 for contempt of court because he asked a witness a particular question after the circuit judge had instructed him not to ask the question. Mr. Rowell, evidently regarding the issue as a matter of principle, seeks a writ of certiorari to quash the court's order, on the ground that the trial court "could not find petitioner guilty beyond a reasonable doubt of knowingly and intentionally violating an order of the court." The Court of Appeals transferred the case to us. We uphold the trial court.

At the outset we observe that although the trial judge must be convinced beyond a reasonable doubt that a criminal contempt was committed, that is not the standard of review in this court. We view the record in the light most favorable to the trial court's decision and formerly sustained that decision if supported by substantial evidence. *Dennison v. Mobley,* 257 Ark. 216, 221, 515 S.W.2d 215 (1974); *Songer v. State,* 236 Ark. 20, 364 S.W.2d 155 (1963). Now we sustain the decision unless it is clearly erroneous. ARCP Rule 52. We must also bear in mind the considerations mentioned in *Dennison v. Mobley, supra:*

> Perhaps there is no case in which the [trial] court's observation of the parties, and their demeanor and conduct, including their manner of speaking and tone of voice, their facial expressions and body movements, can be more important than on a charge of contempt, particularly criminal contempt, of which attitudes of the alleged contemnor can be such an integral part.

We have only a partial record of the two-day criminal trial, near the close of which the asserted contempt of court occurred. Apparently the Morrilton chief of police, Robyn Masingill, was being tried for having removed and converted to his own use certain cans of beer that had been seized and stored in the police department's evidence room. Debbie Reynolds, a witness for the State, apparently testified that Charles Hesselbein, a former alderman, had also been involved in the removal of the beer. When the State rested its

case the trial judge refused to allow Mr. Rowell, as defense counsel, to call Hesselbein as a witness, because his name had not been furnished to the prosecutor. The correctness of that ruling is not before us.

After the defense rested, the State recalled Debbie Reynolds as a rebuttal witness. On her direct examination her pertinent testimony was confined to a diagram which she had prepared, showing the evidence room and the location of the beer in that room. She did not mention Hesselbein's name or the removal of the beer. On cross examination she was asked if she had testified (during the State's case in chief) that she held the door of the evidence room open while Masingill and Hesselbein went in and got the beer. She answered that she had merely stood by the door and talked to someone else: "I never said that I held the door back while they got the beer."

After the State had completed its rebuttal testimony Mr. Rowell said he wanted to call Hesselbein "as a witness on surrebuttal to rebut the location of Debbie's drawing and also as to . . . which way the door opens and if he had ever been there or not." The record then continues:

Mr. Tatum [the prosecutor]: Your Honor, I have no objection to him calling him for rebuttal purposes to rebut what was covered on direct.

By the Court: Surrebuttal, that's right.

Mr. Tatum: But I think counsel should be cautioned to stay within those frameworks and those lines.

By the Court: All right.

Mr. Tatum: I would hate to see a mistrial at this late date.

By the Court: I think we all know the rules of rebuttal and surrebuttal and all that since our law school days, probably the second year of law school, so let's stay within those boundaries.

Mr. Rowell: I want to, your Honor, but I want the Court to advise and to rule on with me as to how far I can go with reference to whether or not Chester Hesselbein had ever been in that evidence room since he and Robyn were there, I want to go that far.

By the Court: You can do that.

Hesselbein was then put on the stand as a surrebuttal witness. Mr. Rowell showed him Debbie's drawing of the evidence room and continued:

Q. . . . [W]ere you ever outside this evidence room, right here?

A. No.

Q. Did Debbie Reynolds ever let you and Chief Masingill in this evidence room?

A. No, sir.

Q. All right, now did you ever enter this door into the evidence room with Robyn Masingill and while Debbie Reynolds was standing outside and *carry anything out of that evidence room*? [Our italics.]

A. No, sir.

Q. While you were in this evidence room —

Mr. Tatum: Your Honor, may I approach the bench?

By the Court: Yes.

During the ensuing colloquy the prosecutor asked that Mr. Rowell be held in contempt. The court took the motion under advisement.

At a hearing two weeks later the circuit judge stated that "on two occasions I advised Mr. Rowell not to ask certain questions. Those questions were asked despite my telling Mr. Rowell not to ask them. I consider that to be an act giving rise to contempt, and I'm holding Mr. Rowell in contempt of court for deliberately asking questions I said would not be asked." In response Mr. Rowell made a detailed statement: "My question went only to the location of the room and its contents, and not with anything else." Actually the question was, did you carry anything out of that evidence room, which of course would include the beer. Mr. Rowell went on to say: "The question I asked Mr. Hesselbein did not make any direct reference to the beer. I asked him . . . if he had ever been in the room and I asked him if he had ever taken anything from the room. . . . The response that I wanted to elicit from the witness, your Honor, was not

that he took any beer or whiskey out of there, but whether or not there was a room for him to take anything out of. . . . I thought that I could go that far as long as I did not make any direct reference to the beer or the whiskey, which I did not do." The court evidently did not accept the suggestion that counsel meant to ask whether there was a room for anything to be taken out of — a fact never in dispute.

We have quoted the essential parts of the record and will let it speak for itself. We cannot say that the trial court was clearly in error in finding in its written order that "an act of contempt was committed in its presence by Mr. Felver Rowell by deliberately asking questions which he was instructed not to ask." The trial judge was warranted in concluding that Mr. Rowell attempted to put before the jury Hesselbein's statement that he had not carried out the beer, a statement not within the scope of the permitted surrebuttal.

We are not persuaded by the petitioner's argument that the prosecutor should have objected to the pivotal question and that the judge should have warned Mr. Rowell more specifically than he did. The prosecution almost at once asked for permission to approach the bench to make his objection; the trial judge knew, as we do not, just how promptly that request was made. As for the warning, the court stated that on two occasions Mr. Rowell had been told not to ask certain questions. A third warning was not necessary. Finally, the finding of contempt did not take place in the heat of the trial. That finding was made two weeks after the trial, without any indication either then or earlier that the trial judge acted in anger or even with impatience. His disposition of the matter was not clearly erroneous.

Writ denied.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I strongly disagree with the majority in this case. I think the opinion will have a chilling effect on most lawyers who represent people accused of a crime. So far as I am concerned the damage created

by this opinion actually erodes the protection offered citizens of Arkansas and the United States by the Fifth and Sixth Amendments to the Constitution of the United States and Sections 8, 10, 13 and 21 of Article 2 to the Constitution of Arkansas.

When an attorney undertakes to represent an accused he must do so with all his ability except that which might impose upon truth and justice. The attorney representing a client owes that client his full loyalty as well as a pledge to put to the best possible use his learning, talents and judgment. One who gives less than this is not worthy of his hire and is not a credit to his profession as an advocate. The trial or appellate court which prohibits a lawyer from representing his client to the very best of his ability decidedly undercuts the adversary system as it should function.

I do not interpret the facts to be the same as those enumerated in the majority opinion. For example, I find neither in the briefs nor the abstracts where the trial court instructed the petitioner not to ask any particular question. The proceedings leading up to the contempt citation occurred during a rebuttal and surrebuttal phase in the trial. A witness testified (unexpectedly to the defense) that a certain city official had accompanied the accused to an evidence room where the missing items had been stored. The official mentioned had not been listed as a witness by the defense for the simple reason that they did not know he would be referred to in testimony elicited by the state. In any event, the pertinent part of the proceedings are set out verbatim in the majority opinion. The state clearly told the court there would be no objection to testimony rebutting "what was covered on direct." The court then stated that everyone knew the rules of rebuttal and surrebuttal and had known them since their second year of law school. That does not provide much guidance to counsel, as I have never seen the rules about which the court spoke. Petitioner appeared to seek a more definite understanding of the court's ruling by asking the following question and receiving an answer:

I want to, your honor, but I want the court to advise and to rule on with me as to how far I can go with reference

to whether or not Chester Hesselbein had ever been in that evidence room since he and Robyn were there, I want to go that far.

By the court: You can do that.

It seems to me that the court permitted petitioner to ask Hesselbein any questions relating to the direct or rebuttal testimony of witness Debbie Reynolds. It was her testimony that placed the accused and Hesselbein in the evidence room from which they allegedly removed the beer. The proffered testimony of Hesselbein clearly indicates witness Debbie Reynolds told the jury she was present when the accused took the beer from the evidence room and handed it to Hesselbein. It is also abundantly clear that the defense was never furnished any information indicating Hesselbein would be named in any manner at the trial. In fact Debbie Reynolds refused to be interviewed by the petitioner prior to trial. During the testimony of Debbie Reynolds she stated the diagram she made represented the evidence room at the time the beer was delivered. She further testified she had a key to the evidence room and told about many other details including which direction the door opened and where she stood while the accused and Hesselbein took the beer from the evidence room. No doubt the state knew Reynolds intended to implicate Hesselbein when she testified and that her accusations would require Hesselbein to either silently admit his involvement or take the stand and attempt to rebut her testimony. This placed the defense in an untenable position. As they were not possessed of clairvoyant powers, they could not discover the unknown witness in time to furnish the name to the state, which already knew it anyway. The court refused to allow Hesselbein to give direct defense testimony because his name had not been furnished to the state prior to the trial.

An additional fact in this case is that the accused was advised by letter from the state that any attempt on his part to contact any witnesses about the ongoing investigation of the police department might result in a tampering charge. It seems to me that the accused's hands were tied behind his back while he fought to defend himself.

Furthermore, it was the state that instituted the charge of contempt against petitioner. Whatever the conduct of petitioner was, it was not obvious at the time to the court or at least the court did not interrupt petitioner until the state moved to hold him in contempt. I submit that most lawyers and judges would be hard put to write down the rule relating to surrebuttal. In any event petitioner was neither cautioned nor admonished by the court prior to the state's motion.

Debbie Reynolds testified before the jury that the accused and Hesselbein were together in or at the evidence room and took the beer. Petitioner had been given express permission to question Hesselbein on matters testified to by Reynolds in direct testimony or in rebuttal. In my opinion petitioner was definitely within the bounds of proper surrebuttal.

Members of the bar should be encouraged to represent their clients with vigor and should be allowed to do so without fear of punishment for contempt except in cases where it disrupts the process or reflects upon the judiciary or officers of the court. The majority opinion reflects adversely upon the necessary degree of devotion an attorney may use to protect his client's rights, and in so holding impinges upon the rights of every attorney in this state to defend his clients. I would not have them looking constantly over their shoulders and wondering if their defense would bring a contempt charge down upon them.