Jack YARBROUGH *v.* Diana YARBROUGH

87-141    748 S.W.2d 123

Supreme Court of Arkansas
Opinion delivered April 11, 1988

*James P. Clouette*, for appellant.

No brief filed for appellee.

TOM GLAZE, Justice. This case emanates from a divorce action in which the appellant had been ordered to make monthly child support payments. Appellant allegedly became delinquent in his payments, and the trial court issued a court order for him to appear and show cause why he should not be held in contempt. During his attempt to serve this order, Doyne Ball, a process server, was attacked and beaten by appellant. Appellant's actions resulted in the trial court's setting a hearing to determine if appellant was in criminal contempt of court. At the end of that hearing, the court found the appellant guilty and sentenced him to six months imprisonment and a fine of $100.00. We affirm.

In reviewing cases of criminal contempt, we view the record in the light most favorable to the trial judge's decision and sustain that decision if supported by substantial evidence. *Rowell v. State*, 278 Ark. 217, 644 S.W.2d 596 (1983); *Dennison* v.

*Mobley, Chancellor,* 257 Ark. 216, 515 S.W.2d 215 (1974).

The record clearly reflects that the appellant attacked and assaulted Mr. Ball. In fact, Mr. Larry Sims was an eyewitness to the assault, and testified that he observed the appellant pursue and strike Ball. A police officer testified that he arrived moments after the incident to find Ball appearing disheveled and bleeding and attempting to serve "some type of subpoena" on the appellant. Although appellant does not dispute that he struck Ball, he argues that he was not in contempt because his action did not constitute disobedience of process. Appellant further claims that, even if he were in contempt, the applicable statutory law limits the sentence that can be imposed to a maximum of ten days in jail and a fine of $50.00.

Appellant relies upon Ark. Code Ann. § 16-10-108 (1987) which sets forth the powers of the court in punishing criminal contempt. He particularly refers to subsection (a)(3) which provides that the court may punish "willful disobedience of any process or order lawfully issued or made by it," and to subsection (b)(1) which provides for a maximum of ten days imprisonment and a fine of $50.00.

This court, however, has interpreted the foregoing statutory provisions and has held they are not a limitation on the power of the court to inflict punishment for disobedience of process. *Morrow* v. *Roberts, Judge,* 250 Ark. 822, 467 S.W.2d 393 (1971). Stated in other terms, this court, citing Article 7, § 26 of the Arkansas Constitution, held the Legislature cannot abridge the power of the courts to punish for contempt in disobedience of their process; the Constitution specially reserved this inherent power in the courts, when delegating authority to the Legislature to regulate punishments for contempts. *Spight* v. *State,* 155 Ark. 26, 243 S.W. 860 (1922); *Ford* v. *State,* 69 Ark. 550, 64 S.W. 879 (1901). Also relevant to the present case, we point out that, in *Bryan* v. *State,* 99 Ark. 163, 137 S.W. 561 (1911), this court held that a person's resistance of process, or evasion or circumvention of an officer in the service of process, where it is sufficient to amount to contempt of court, is disobedience of process, and therefore falls within the language of the constitution, which in effect forbids regulation by the Legislature. *See also Spight,* 155 Ark. 26, 243 S.W. 860.

■ Here, appellant clearly resisted Ball's efforts to serve the trial court's order on him, and did so by conduct that could be characterized not only as willful, but also as criminal in nature. Because the appellant acted in willful disobedience of the court's process or order, the trial court, according to well-established law, was not limited to those penalties prescribed by § 16-10-108.[1]

■ Finally, appellant contends that the sentence imposed by the trial court constitutes cruel and unusual punishment. That argument, however, was not raised below, and, therefore, we are unable to consider it for the first time on appeal. *See, e.g., Boatman* v. *Dawkins*, 294 Ark. 421, 743 S.W.2d 800 (1988).

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. This court never ceases to amaze me, especially in matters of chancery. Now it has conferred jurisdiction to try criminal cases upon chancellors. In the process it points out that a state statute is ineffective in restricting the contempt powers of chancellors and this court. At the same time the majority opinion ignores the United States Constitutional provisions concerning due process and double jeopardy.

Without doubt the record reveals that the appellant violated a criminal law when he attacked Doyne Ball and is most probably liable for civil damages. However, he has been or will be tried on criminal charges and may or may not be sued for damages. That is up to the victim. As disgusting as appellant's action may appear, he is still entitled to due process and equal protection of the law.

Punishment for indirect contempt is a matter for the General Assembly to define. Article 7, Section 26, of the Constitution of Arkansas states:

> The General Assembly shall have power to regulate by law the punishments of contempts not committed in the pres-

---

[1] We note that a person may demand a jury trial in a criminal contempt proceeding when the possible imprisonment may exceed six months. *Taylor* v. *Hayes*, 418 U.S. 488 (1974); *Edwards* v. *Jameson*, 283 Ark. 395, 677 S.W.2d 842 (1984).

ence or hearing of the courts, or in disobedience of process.

The General Assembly has enacted legislation presently codified at Ark. Code Ann. § 16-10-108 (1987). This section of the code defines contempt which is within the inherent discretion of the courts. The statute also defines acts constituting contempt committed outside the presence and hearing of the court and in disobedience of process. Pursuant to Article 7, Section 26 of the Constitution the General Assembly is granted such authority. The various provisions in § 16-10-108 clearly stand alone and are severable. Therefore, we are bound to give effect to those sections which were lawfully enacted. Contempts committed outside the presence of the court, or which do not interrupt its proceedings or impair its respect, are limited by the Constitution to punishment established by law. In this case punishment has been limited by the legislature to a fine of no more than $50 and imprisonment of no more than ten (10) days.

Punishment for contempt committed in the "presence or hearing" of the court is inherent and is specifically reserved to the courts. However, the General Assembly is specifically authorized by the Constitution to regulate punishment for contempt committed outside the presence and hearing of the courts and in disobedience of process.

The assault on Mr. Ball clearly was not in the presence or hearing of the court. Therefore, it is a matter which the General Assembly has the power to regulate by law. The offensive conduct here arose out of an attempt by the process server to serve an order of the trial court upon the appellant. The chancellor found the appellant guilty of "interfering with a person authorized to serve papers, orders and process of the court by attacking and beating Doyne Ball who had served or was serving an order of the court and making return of service thereon."

The "process" Ball was serving was an order for appellant to appear at a "show cause" hearing. The appellant appeared as ordered. Therefore, he was not in disobedience of this order nor was he in violation of any other order revealed by the record. He apparently became enraged when he was served and assaulted the process server. The assault occurred nowhere near the court. His action constituted a violation of criminal law and subjected him to civil liability. The additional punishment by the chancellor in the

form of jail time and a fine clearly violates the constitutional prohibition against multiple punishments for the same offense. Two punishments for the identical act is simply not tolerated under the Constitution.

The majority cites several cases in support of its opinion. However, I find none of them on point. In *Morrow* v. *Roberts, Judge,* 250 Ark. 822, 467 S.W.2d 393 (1971), the trial court held Morrow in contempt for failing to obey a subpoena to appear, and separately for failure to get a hair cut. This court affirmed the failure to obey but reversed his conviction for refusal to get his hair cut. Morrow's failure to obey the subpoena was a refusal to obey the order of the court. *Spight* v. *State,* 155 Ark. 26, 243 S.W. 860 (1922), involved a contempt citation by the grand jury against Spight for hiding when the sheriff was trying to serve him with a subpoena to testify before the grand jury. *Bryan* v. *State,* 99 Ark. 163, 137 S.W. 561 (1911), also was based upon disobedience of process.

No reference is made by the majority to any of the leading cases concerning contempt. In *Freeman* v. *State,* 188 Ark. 1058, 69 S.W.2d 267 (1934), this court extensively reviewed prior contempt cases and reversed the trial court's finding of contempt for activities committed out of the presence or hearing of the court; in *Edwards* v. *Jameson, Judge,* 284 Ark. 60, 679 S.W.2d 195 (1984), we reversed a contempt of court conviction based upon a disturbance outside the courtroom because there was no reflection upon the integrity of the court and no disturbance of its proceedings; in *Clark* v. *State,* 287 Ark. 221, 697 S.W.2d 895 (1985), this court, speaking of criminal contempt, stated: "[t]his is a problem the legislature needs to address as we are confined to the resolution of specific issues and it is not the function of this court to promulgate guidelines and rules for criminal contempt charges."

Similarly in *Clark* v. *State,* 291 Ark. 405, 725 S.W.2d 550 (1987), we thoroughly reviewed our decisions in matters relating to contempt of court. In *Clark II* the appellant filed a motion requesting the trial court to recuse. The motion was baseless and accused the judge of criminal misconduct. The trial judge was not aware that the scurrilous motion had been filed until some time later when he ordered Clark to show cause why he should not be

held in contempt. The court convicted Clark of criminal contempt and we reversed on the ground that the judge should have recused.

Upon retrial before another judge, Clark was again found guilty of criminal contempt for filing the motion accusing the first judge of being a crook. We again reversed because the facts of the case were insufficient to form the basis for a contempt conviction. The thrust of our holding in *Clark II* was that the motion was not presented in a manner as to be "disruptive of proceedings before the court or in such a way as to incite disruption or disrespect for the court by others." Therefore, such acts did not constitute contempt.

The *Clark II* opinion cited with approval language from *In Re Larry Little*, 404 U.S. 553 (1972), as follows:

> There is no indication, and the State does not argue, that petitioner's statements were uttered in a boisterous tone or in any wise actually disrupted the court proceeding. Therefore, "the vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil . . . . [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate." *Craig* v. *Harney*, 331 U.S. 367, 376 (1947). "Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown* v. *United States*, 356 U.S. 148, 153 (1958).

The reversal of this conviction is necessarily required under our holding in *Holt* v. *Virginia*, 381 U.S. 131 (1965). There attorneys filed motions that the trial judge recuse himself and for a change of venue, alleging that the judge was biased. The motion for change of venue alleged that the judge intimidated and harassed the attorneys' client. The court adjudged the attorneys in contempt for filing these motions. We reversed for reasons also applicable here:

"It is not charged that petitioners here disobeyed any valid court order, talked loudly, acted boisterously, or attempted to prevent the judge or any other officer of the court from carrying on his court duties. Their convictions rest on nothing whatever except allegations made in motions for change of venue and disqualification of Judge Holladay because of alleged bias on his part." *Id.* at 136 [404 U.S. at 555-556]

The *Clark II* opinion, after carefully examining all our prior cases on contempt and many of the decisions of the United States Supreme Court, concluded that even those justices constituting the majority would have affirmed "had there been any disruption or open insult or degrading comment whatsoever accompanying the filing of the motion."

It is my opinion that the majority in this case takes a step backward and that this decision is a knee-jerk reaction to a criminal assault which in no manner disrupted court proceedings or reflected on the integrity of the court. Such matters should be left to the discretion of the victim and the criminal and civil courts. Further, by the express terms of the Arkansas Constitution, it is the General Assembly that has the power to regulate contempts committed outside the presence or hearing of the courts. It has done so. The conduct of appellant in this case is not in violation of the statute.

I would reverse and dismiss.