611 S.E.2d 273

The STATE, Respondent,

v.

Melissa PASSMORE, Appellant.

No. 3950.

Court of Appeals of South Carolina.

Submitted Feb. 1, 2005.

Decided Feb. 22, 2005.

Rehearing Denied April 21, 2005.

Assistant Appellate Defender Tara S. Taggart, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

ANDERSON, J.:

A family court judge found Melissa Passmore (Appellant) in willful contempt of a prior order and sentenced her to one year in prison. Appellant contends her sentence violates the United States Constitution. We agree but affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

In 1996 the family court issued a written order requiring Appellant and her husband to ensure that their eight-year-old daughter "regularly attend school and see to it that the minor(s) does/do so attend school for the remainder of this

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

school year and future school years, under penalty of law." In February of 2002, when their daughter was fourteen years old, Appellant and her husband were summoned to a rule to show cause hearing to answer allegations of educational neglect in connection with their daughter. The family court continued the hearing so that the Passmores could obtain counsel. The proceeding resumed in April of 2002, and the family court judge found Appellant and her husband in willful contempt of the 1996 order. The judge sentenced both of them to one year in prison, and she took emergency protective custody of the Passmores' minor daughter. Appellant contends the sentence violated her federal constitutional right to a trial by jury in serious criminal cases.

## *LAW/ANALYSIS*

### I. The Constitutional Limitation on the Contempt Power

"The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice." *Curlee v. Howle,* 277 S.C. 377, 382, 287 S.E.2d 915, 917 (1982) (citing *McLeod v. Hite,* 272 S.C. 303, 251 S.E.2d 746 (1979); *State v. Goff,* 228 S.C. 17, 88 S.E.2d 788 (1955)). The determination of contempt ordinarily resides in the sound discretion of the trial judge. *State v. Bevilacqua,* 316 S.C. 122, 129, 447 S.E.2d 213, 217 (Ct.App. 1994).

Contempt results from the willful disobedience of an order of the court, and before a court may hold a person in contempt, the record must clearly and specifically demonstrate the acts or conduct upon which such finding is based. *Curlee* at 382, 287 S.E.2d at 918; *accord Cheap-O's Truck Stop, Inc. v. Cloyd,* 350 S.C. 596, 606, 567 S.E.2d 514, 519 (Ct.App.2002). A willful act is "one done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say with bad purpose either to disobey or disregard the law." *Bevilacqua,* 316 S.C. at 129, 447 S.E.2d at 217 (internal quotation marks and citation omitted). Intent

for purposes of criminal contempt is subjective, not objective, and must necessarily be ascertained from all the acts, words, and circumstances surrounding the occurrence. *Id.* (citing *State v. Bowers*, 270 S.C. 124, 241 S.E.2d 409 (1978)).

Although the contempt power is inherent and essential to the preservation of orderly proceedings, it is not unbounded; the power of contempt is checked by the sacrosanct right to be tried by a jury of one's peers. Article III, Section 2, of the United States Constitution provides: "The trial of all Crimes, except in Cases of Impeachment, shall be by Jury...." The right to a jury trial is amplified by the Sixth Amendment, which reads, in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...."

Currently, these provisions require a contemnor to be allowed a jury trial when facing a serious sentence—i.e., one of greater than six months in prison. *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). However, contemnors have not always been afforded the right to a jury trial, even in serious cases. As late as 1964, the United States Supreme Court held that there was no right to a jury trial in a criminal contempt case. *See U.S. v. Barnett*, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964). *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966) tempered the longstanding rule expressed in *Barnett*. In *Cheff*, the Court upheld a criminal contempt sentence of six months imposed without the benefit of a jury trial. Yet, the Court distinguished the conviction as involving a petty offense and concluded: "sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof." *Id.* at 380, 86 S.Ct. 1523.

With *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Court declared the provisions of the Sixth Amendment were applicable to state governments via the Fourteenth Amendment:

Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in federal

court—would come within the Sixth Amendment's guarantee.

*Id.* at 149, 88 S.Ct. 1444 (footnote omitted). The Court further established that "in the American States, as in the federal judicial system, a general grant of jury trial for serious offenses is a fundamental right, essential for preventing miscarriages of justice and for assuring that fair trials are provided for all defendants." *Id.* at 157–58, 88 S.Ct. 1444. However, the Court was careful to note: "we hold no constitutional doubts about the practices, common in both federal and state courts, of accepting waivers of jury trial and prosecuting petty crimes without extending a right to jury trial." *Id.* at 158, 88 S.Ct. 1444 (footnotes omitted).

A pivotal companion case, *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), presented the question whether a state court could sentence a criminal contemnor to two years imprisonment without a jury trial. The *Bloom* court began by observing that the Court had "consistently upheld the constitutional power of the state and federal courts to punish *any* criminal contempt without a jury trial." *Id.* at 195–96, 88 S.Ct. 1477 (emphasis added). The Court acknowledged the holding of *Cheff* that contempt was not an intrinsically serious offense and that punishment of six months in prison did not render an offense serious. Justice White, writing for the *Bloom* majority, then explained:

Our deliberations have convinced us, however, that serious contempts are so nearly like other serious crimes that they are subject to the jury trial provisions of the Constitution, now binding on the States, and that the traditional rule is constitutionally infirm insofar as it permits other than petty contempts to be tried without honoring a demand for a jury trial.

. . . .

Given that criminal contempt is a crime in every fundamental respect, the question is whether it is a crime to which the jury trial provisions of the Constitution apply. We hold that it is, primarily because in terms of those considerations which make the right to jury trial fundamental in criminal cases, there is no substantial difference between serious contempts and other serious crimes. In-

deed, in contempt cases an even more compelling argument can be made for providing a right to jury trial as a protection against the arbitrary exercise of official power.

*Bloom* at 198–202, 88 S.Ct. 1477.

Thus, *Duncan* established that a jury trial must be afforded to a defendant facing a serious offense, and *Bloom* held that *Duncan* applies in the criminal contempt context. *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), then presented the Court with the task of defining the line between petty and serious offenses. The Court cogently explained:

> In deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense, ... and we have found the most relevant such criteria in the severity of the maximum authorized penalty.... [W]e have held that a possible six-month penalty is short enough to permit classification of the offense as 'petty,' ... but that a two-year maximum is sufficiently 'serious' to require an opportunity for jury trial.... The question in this case is whether the possibility of a one-year sentence is enough· in itself to require the opportunity for a jury trial. We hold that it is. More specifically, we have concluded that no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized.

*Id.* at 68–69, 90 S.Ct. 1886 (footnote and citations omitted).

In 1974, the Court issued two opinions treating the right to a jury trial as affected by multiple contempt sentences of six months or less. In *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), Codispoti was tried before a judge on contempt charges stemming from a prior criminal proceeding in which Codispoti was a defendant. His demand for a jury trial in the contempt case was denied. *Id.* at 507–08, 94 S.Ct. 2687. The judge found he had committed seven contemptuous acts and sentenced him to six months in prison for each of six contempts and three months in prison for the seventh, the sentences to run consecutively. *Id.* at 509, 94 S.Ct. 2687. Therefore, Codispoti was sentenced to three years and three months for his contemptuous acts. *Id.*

at 516, 94 S.Ct. 2687. His co-defendant was similarly sentenced. *Id.* at 517, 94 S.Ct. 2687.

In reversing Codispoti's conviction, the Court reviewed the historical and cultural importance the notion of the jury trial holds in the United States:

> The jury-trial guarantee reflects a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. The Sixth Amendment represents a deep commitment of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement. Moreover, criminal contempt is a crime in every fundamental respect.... (I)n terms of those considerations which make the right to jury trial fundamental in criminal cases, there is no substantial difference between serious contempts and other serious crimes. Indeed, in contempt cases an even more compelling argument can be made for providing a right to jury trial as a protection against the arbitrary exercise of official power. Contemptuous conduct, though a public wrong, often strikes at the most vulnerable and human qualities of a judge's temperament. Even when the contempt is not a direct insult to the court or the judge, it frequently represents a rejection of judicial authority, or an interference with the judicial process or with the duties of officers of the court.

*Id.* at 515–16, 94 S.Ct. 2687 (internal quotation marks and citations omitted). *Bloom* had lucidly established a right to a jury trial where a contemnor was sentenced to more than six months in prison; the issue for the *Codispoti* court was whether the defendants "were entitled to jury trials because the prison sentences imposed after post-trial convictions for contemptuous acts during trial were to be served consecutively and, although each was no more than six months, aggregated more than six months in jail." *Id.* at 512–13, 94 S.Ct. 2687 (footnote omitted). Because "the contempts against each petitioner [were] tried seriatim in one proceeding, and ... the individual sentences were to run consecutively rather than concurrently," the Court held: "In terms of the sentence imposed, ... each contemnor was tried for what was equiva-

lent to a serious offense and was entitled to a jury trial." *Id.* at 516–17, 94 S.Ct. 2687.

In contrast, *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), involved a contemptuous attorney whose sentences totaled almost four and one half years in the aggregate, but ran concurrently and were "equivalent to a single sentence of six months." *Id.* at 495, 94 S.Ct. 2697. The Court found the contempts were petty offenses and trial by jury was not required. *Id.* at 496, 94 S.Ct. 2697.

Shortly after *Codispoti* and *Taylor,* the Court recapitulated the evolution of the right to trial by jury as follows:

> *Green v. United States,* 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958), reaffirmed the historic rule that state and federal courts have the constitutional power to punish any criminal contempt without a jury trial. *United States v. Barnett,* 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964), and *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), presaged a change in this rule. The constitutional doctrine which emerged from later decisions such as *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Frank v. United States,* 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), and *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), may be capsuled as follows: (1) Like other minor crimes, petty contempts may be tried without a jury, but contemnors in serious contempt cases in the federal system have a Sixth Amendment right to a jury trial; (2) criminal contempt, in and of itself and without regard to the punishment imposed, is not a serious offense absent legislative declaration to the contrary; (3) lacking legislative authorization of more serious punishment, a sentence of as much as six months in prison, plus normal periods of probation, may be imposed without a jury trial; (4) but imprisonment for longer than six months is constitutionally impermissible unless the contemnor has been given the opportunity for a jury trial.

*Muniz v. Hoffman,* 422 U.S. 454, 475–76, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975).

Approximately half of the states have acknowledged *Bloom's* prescription. The Supreme Court of Alaska, in *State v. Browder*, 486 P.2d 925 (Alaska 1971), recognized the change in the law brought about by *Bloom* in a case where a contemnor was sentenced to six months in prison for bringing a shotgun into a courtroom. *Id.* at 926–27. However, the *Browder* court concluded that the Alaska Constitution did entitle the contemnor to a jury trial for a six-month term of imprisonment. *Id.* at 935–36.

*Bloom* was addressed by the California Court of Appeal in a case where a contemnor was sentenced to 210 days in jail based on forty-two violations of a court order. *In re Kreitman*, 40 Cal.App.4th 750, 47 Cal.Rptr.2d 595 (1995). There, the contemnor was not afforded a jury trial; consequently, the court of appeal ordered "a writ of habeas corpus issue directing the trial court to resentence petitioner to a sentence of no more than 180 days." *Id.* at 599.

*People v. Kriho*, 996 P.2d 158 (Colo.Ct.App.1999) sanctioned *Bloom*, but found the contemnor there was not impermissibly denied a right to a jury trial because "[b]efore Kriho was tried for contempt, the People filed a document entitled 'Notice of Maximum Sentence Not to Exceed Six Months,' which established that the People would not seek a jail sentence exceeding six months." *Id.* at 177.

Similarly, the Delaware Supreme Court, after reviewing the development of the right to a jury trial in criminal contempt cases, found that a contemnor was not entitled to a trial by jury where he was sentenced to only eighty days for contempt. *Thomas v. State*, 331 A.2d 147 (Del.1975).

In *Aaron v. State*, 284 So.2d 673 (Fla.1973), the Florida Supreme Court deduced that, due to *Bloom* and its line of cases, a "judge's denial of a pre-trial motion for trial by jury will mean that he cannot impose a sentence of six months' imprisonment, or greater, should there be a finding of guilt." *Id.* at 676.

*Dutton v. District Court of Third Judicial District*, 95 Idaho 720, 518 P.2d 1182 (1974), is another case which endorsed *Bloom*, but avoided its application because "petitioner was found guilty of a misdemeanor. Therefore, he enjoyed no right to a jury trial." *Id.* at 1186.

In *McLean County v. Kickapoo Creek, Inc.*, 51 Ill.2d 353, 282 N.E.2d 720 (1972), the Supreme Court of Illinois reversed the sentence of Lewis, the president of the named defendant corporation. Lewis had been sentenced to one year in prison and fined $10,000. Lewis planned a rock festival to take place on a farm for Memorial Day weekend, 1970. Although he was under a court order not to proceed with the festival, Lewis put on the concert and was found in contempt. In reversing Lewis's year sentence, the court found that the facts did not establish that Lewis "knowingly or expressly waived the right to a jury trial by remaining silent during the proceedings." *Id.* at 723. Accordingly, his conviction was reversed and remanded for a new trial. *Id.*

*Sarich v. Havercamp* involved a contempt sentence for violation of an injunction against practicing dentistry without a license. 203 N.W.2d 260 (Iowa 1972). Therein, the Iowa Supreme Court held that *Bloom*; *Baldwin*, and *Duncan* necessitated the contemnor be given a jury trial where he was "exposed to a fine of $14,000 maximum or imprisonment for a maximum of 14 years." *Id.* at 268.

*Miller v. Vettiner*, 481 S.W.2d 32 (Ky.Ct.App.1972), recognized *Bloom's* provision that "the Sixth Amendment right to a jury trial applies to criminal contempt proceedings in which the offense has been equated with a 'serious' crime by virtue of the extent of punishment authorized by statute." *Id.* at 35. However, the $500 fine at issue there was "not enough to equate the offense with a 'serious' crime." *Id.*

In *Louisiana State Board of Medical Examiners v. Bates*, 258 La. 1049, 249 So.2d 127 (1971), the Louisiana Supreme Court undertook a thorough review of the applicable Supreme Court precedent, and vacated a contemnor's conviction where, by statute, he could have been fined up to $1,000 or sentenced to up to twelve months in prison.

In *Hinton v. State*, 222 So.2d 690, 692 (Miss.1969), the Supreme Court of Mississippi concluded, based on *Bloom*, "where the confinement is not more than six months and the fine not more than $500, that the offense is a petty one and the accused is not entitled to a jury trial under the Sixth Amendment to the Constitution of the United States." *Id.* at 692.

*Ryan v. Moreland,* 653 S.W.2d 244 (Mo.Ct.App.1983), recognized *Bloom* and *Codispoti,* but found *Ryan* distinguishable because "the contempts here did not grow out of a unitary course of conduct, i.e., continuing statements of disrespect for and villification [sic] of a judge during the course of a trial." *Id.* at 249. Thus, although the separate contempt sentences amounted to more than six months in prison, they were upheld.

The Court of Appeals of New York, in *Rankin v. Shanker,* 23 N.Y.2d 111, 295 N.Y.S.2d 625, 242 N.E.2d 802 (1968) noted *Bloom* is "plainly limited in its application to 'serious' crimes in contradistinction to 'petty' offenses." *Id.* at 807.

*In re Davis,* 77 Ohio App.3d 257, 602 N.E.2d 270 (1991) recognized a criminal contemnor "must be afforded a jury trial for 'serious' contempts" and cited *Bloom. Davis* at 278.

In *Commonwealth v. Mayberry,* 435 Pa. 290, 255 A.2d 548 (1969), the Pennsylvania Supreme Court recognized the rule in *Bloom,* but based on *DeStefano v. Woods,* 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), held that *Bloom* need not be applied retroactively. Therefore, appellant's sentences totaling five years imprisonment for various contemptuous acts were affirmed.

*State v. Dusina,* 764 S.W.2d 766 (Tenn.1989) cited *Bloom* and stated: "the United States Supreme Court has held that there is no right to a trial by jury under the federal constitution" in cases where a jail sentence of not more than six months may be imposed. *Id.* at 768.

*State v. Hobble,* 126 Wash.2d 283, 892 P.2d 85 (1995) subscribed to *Bloom,* explaining: "Where incarceration is the punishment, a jury trial is required only in the case of a jail term in excess of 6 months; this principle applies in the case of criminal contempt." *Id.* at 94.

In *Hendershot v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90 (1980), the West Virginia Supreme Court observed the "federal constitutional right to a jury trial in cases where the potential punishment involves imprisonment for more than six months." *Id.* at 91.

In *State ex rel. Groppi v. Leslie,* 44 Wis.2d 282, 171 N.W.2d 192 (1969), Groppi was found in contempt by the Assembly of

the Wisconsin Legislature. The Assembly "ordered his imprisonment for the duration of the 1969 regular session of the Wisconsin legislature, or for six months, whichever occurred earlier." *Id.* at 194. In upholding the sentence, the Wisconsin Supreme Court explained:

We are not overlooking [*Bloom*], wherein the Supreme Court after some years of staving off an insistent attack on the summary power of the courts in judicial contempt held in one sweep of the sword that in matters involving imprisonment of over six months in direct judicial contempts, the contemnor was entitled to a jury trial.

*Id.* at 199. The court distinguished Groppi's imprisonment from *Bloom:* "We do not consider this case controlling legislative contempts because as pointed out in this opinion the confinement for legislative contempt is inherently not punishment and is different from either judicial contempt imprisonment or imprisonment for a crime." *Id. See also Morrow v. Roberts,* 250 Ark. 822, 467 S.W.2d 393 (1971) (recognizing the efficacy of the constitutional pronouncement in *Bloom* ); *Ashford v. State,* 358 Md. 552, 750 A.2d 35 (2000) (same); *Spalter v. Kaufman,* 35 Mich.App. 156, 192 N.W.2d 347 (1971) (same); *State v. Smith,* 99 Nev. 806, 672 P.2d 631 (1983) (same); *Ex parte Williams,* 799 S.W.2d 304 (Tex.Cr.App.1990) (same); *Skinner v. State,* 838 P.2d 715 (Wyo.1992) (same).

South Carolina courts have recognized the *Bloom* mandate as well. In *Curlee v. Howle,* 277 S.C. 377, 287 S.E.2d 915 (1982), our supreme court observed:

In *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), the Supreme Court held that prosecutions for serious *criminal* contempts are subject to the jury provisions of Art. III, Section 2 of the Constitution, and of the Sixth Amendment, which is made binding upon the states by virtue of the due process clause of the Fourteenth Amendment. In *Codispoti v. Pennsylvania,* 418 U.S. 506, ...(1974) the court held that defendants in state *criminal* trials who are committed to imprisonment of more than *6 months* are entitled to a jury trial.

*Id.* at 383, 287 S.E.2d at 918; *see also Poston v. Poston,* 331 S.C. 106, 113, 502 S.E.2d 86, 89 (1998) ("The United States Supreme Court has held a defendant charged with a serious as

opposed to a petty criminal contempt is entitled to a jury trial."); *State v. Buchanan*, 279 S.C. 194, 304 S.E.2d 819 (1983) (finding that defendant's sentence of six months in prison did not entitle him to a jury trial and citing *Codispoti*).

Here, Appellant was sentenced to one year in prison, but was not afforded a right to a jury trial. This constitutes a violation of Article III, Section 2, and the Sixth Amendment, as interpreted by *Bloom v. Illinois*.

## II. Mootness

■ The State contends that even if Appellant's sentence was unconstitutional, we should affirm because she has served the sentence, rendering the case moot. We disagree.

■ A case becomes moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy, thus making it impossible for the reviewing court to grant effectual relief. *Byrd v. Irmo High School*, 321 S.C. 426, 431, 468 S.E.2d 861, 864 (1996); *Cheap–O's Truck Stop, Inc. v. Cloyd*, 350 S.C. 596, 603, 567 S.E.2d 514, 517 (Ct.App. 2002). In *Sloan v. Greenville County*, 356 S.C. 531, 590 S.E.2d 338 (Ct.App.2003), we stated the law of mootness with exactitude:

> In general, this court may only consider cases where a justiciable controversy exists. A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute. Moot appeals differ from unripe appeals in that moot appeals result when intervening events render a case nonjusticiable. This Court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy.... The function of appellate courts is not to give opinions on merely abstract or theoretical matters, but only to decide actual controversies injuriously affecting the rights of some party to the litigation. Accordingly, cases or issues which have become moot or academic in nature are not a proper subject of review.

*Id.* at 552, 590 S.E.2d at 349 (internal quotation marks and citations omitted).

The mootness doctrine is subject to several exceptions, however. In *Curtis v. State,* 345 S.C. 557, 549 S.E.2d 591 (2001), our supreme court enunciated the three primary exceptions to the doctrine:

First, an appellate court can take jurisdiction, despite mootness, if the issue raised is capable of repetition but evading review. Second, an appellate court may decide questions of imperative and manifest urgency to establish a rule for future conduct in matters of important public interest. Finally, if a decision by the trial court may affect future events, an appeal from that decision is not moot, even though the appellate court cannot give effective relief in the present case.

*Id.* at 568, 549 S.E.2d at 596 (citations omitted).

We find the first and third exceptions applicable, and, thus, refuse to dismiss Appellant's appeal as moot.

First, Appellant's infelicitous experience is capable of repetition, yet evades review. In *Byrd v. Irmo High School,* 321 S.C. 426, 468 S.E.2d 861 (1996), the South Carolina Supreme Court clarified the capable of repetition but evading review principle, noting an inconsistency in our courts' decisions on the subject.

Some cases have held that under the exception, a court can take jurisdiction only if (1) the challenged action in its duration was too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the action again.

Other cases have taken a less restrictive approach in defining the exception, holding that a court can take jurisdiction, despite mootness, if the issue raised is capable of repetition but evading review. In effect, this latter approach differs from the former in that it does not require a reasonable expectation that the same complaining party be subjected to the action again.

*Id.* at 431, 468 S.E.2d at 864 (internal quotation marks and citations omitted). The court clarified the inconsistency with the pronouncement: "this less restrictive approach is the appropriate standard in determining the applicability of the evading review exception of the mootness doctrine." *Id.* at 432, 468 S.E.2d at 864.

In the instant case, the State concedes in its brief: "the sentence was in fact too brief to be fully litigated through appeal prior to its expiration...." The issue, then, is whether the constitutional violation suffered by Appellant could be inflicted on a contemnor in the future. That the unconstitutional sentence was imposed here is evidence enough a judge could make the same error in the future. Concomitantly, we find it necessary to remind the bench of the constitutional limitation on a judge's power of contempt.

Additionally, Appellant's case is not moot because the unconstitutional sentence could continue to affect her through collateral consequences. Although Appellant's time has been served, she may yet experience the repercussions of having been sentenced to a year in prison for contempt of court. For example, she might be obliged to indicate jail time served on an employment application. Thus, the sentence could affect her ability to obtain future employment. Likewise, she could be required to disclose the conviction on a credit application, thereby hindering her chances of securing credit. Further, drivers' license applications, voter registration applications, and other documents may mandate the divulgence of prior convictions. Hence, Appellant's unconstitutional conviction will continue to stigmatize and prejudice her. These significant collateral consequences are enough to surmount the mootness doctrine.

### III. Issue Preservation

The State argues that even if we do not find this case moot, we should affirm because the issue was not preserved.

The general rule of issue preservation states that if an issue was not raised and ruled upon below, it will not be considered for the first time on appeal. *State v. Dunbar*, 356 S.C. 138, 587 S.E.2d 691(2003); *State v. Lee*, 350 S.C. 125, 564 S.E.2d 372 (Ct.App.2002). Our courts have "consistently refused to apply the plain error rule." *Jackson v. Speed*, 326 S.C. 289, 306, 486 S.E.2d 750, 759 (1997) (citations omitted). Instead, we have held: "it is the responsibility of counsel to preserve issues for appellate review." *Id.*

Our supreme court, in *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 526 S.E.2d 716 (2000), explained the rationale behind this longstanding rule:

> Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments. The requirement also serves as a keen incentive for a party to prepare a case thoroughly. It prevents a party from keeping an ace card up his sleeve—intentionally or by chance—in the hope that an appellate court will accept that ace card and, via a reversal, give him another opportunity to prove his case.

*Id.* at 422, 526 S.E.2d at 724 (citations omitted); *see also Ellie, Inc. v. Miccichi,* 358 S.C. 78, 103, 594 S.E.2d 485, 498 (Ct.App. 2004) ("Without an initial ruling by the trial court, a reviewing court simply would not be able to evaluate whether the trial court committed error.").

The issue preservation requirement applies to assertions of constitutional violations as well. For example, in *Bakala v. Bakala,* 352 S.C. 612, 576 S.E.2d 156 (2003), the court held that "[a] due process claim raised for the first time on appeal is not preserved." *Id.* at 625, 576 S.E.2d at 163 (citing *Grant v. South Carolina Coastal Council,* 319 S.C. 348, 461 S.E.2d 388 (1995)); *accord Durlach v. Durlach,* 359 S.C. 64, 596 S.E.2d 908 (2004). And in *State v. McWee* 322 S.C. 387, 472 S.E.2d 235 (1996), where appellant asserted violations of due process and his Eighth Amendment rights, the court stated: "this issue is not preserved for review because at trial, appellant never cited any constitutional basis for his request to give a parole eligibility charge." *Id.* at 391, 472 S.E.2d at 238 (citations omitted).

Nevertheless, the rule that an unpreserved issue will not be considered on appeal does have its exceptions. Foremost is the axiomatic principle of law that lack of subject matter jurisdiction may be raised at anytime, including for the first time on appeal. *Carter v. State,* 329 S.C. 355, 495 S.E.2d 773 (1998); *State v. Richburg,* 304 S.C. 162, 403 S.E.2d 315 (1991). Additionally, our courts have developed the doctrine of futility, which recognizes that in circumstances where it would be futile to raise an objection to the trial judge, failure to raise the objection will be excused. *See State v. Pace,* 316 S.C. 71, 74, 447 S.E.2d 186, 187 (1994) (finding "[a]s to counsel's failure to raise an objection, the tone and tenor of the trial judge's remarks concerning her gender and conduct were such that any objection would have been futile."); *State v. Higgenbot-*

*tom*, 344 S.C. 11, 542 S.E.2d 718 (2001) (employing futility doctrine).

Further, an exception exists where the interests of minors or incompetents are involved. *See Shake v. Darlington County Dep't of Soc. Servs.*, 306 S.C. 216, 219 n. 2, 410 S.E.2d 923, 924 n. 2 (Ct.App.1991) (noting, in a termination of parental rights action, that "[a]lthough it is questionable whether Mrs. Shake properly raised each of [the] grounds for termination at trial, we nevertheless address them all."); *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 536 S.E.2d 372 (2000) (approving the court of appeals' conclusion that procedural rules are subservient to the court's duty to zealously guard the rights of minors); *Caughman v. Caughman*, 247 S.C. 104, 109, 146 S.E.2d 93, 95 (1965) (holding that "the duty to protect the rights of incompetents has precedence over procedural rules otherwise limiting the scope of review.").

Appellant cites *State v. Johnston*, 333 S.C. 459, 510 S.E.2d 423 (1999), as providing her an exception to the general rule of issue preservation. In *Johnston*, the defendant was sentenced to ten years in prison for conspiracy. She did not object at trial, but on appeal, she contended the trial court lacked the authority to impose a sentence of ten years for her conspiracy conviction. Furthermore, she argued the issue was one of subject matter jurisdiction and could be raised for the first time on appeal. The supreme court observed "this Court has consistently held that a challenge to sentencing must be raised at trial, or the issue will not be preserved for appellate review." *Id.* at 462, 510 S.E.2d at 425. The court rejected Johnston's argument that the trial court lacked subject matter jurisdiction, stating: "South Carolina courts have continued to recognize a distinction between a trial court's sentencing authority and its subject matter jurisdiction." *Id.* at 463, 510 S.E.2d 423. However, the court acknowledged that

> if this Court unyieldingly enforces PCR as the only avenue of relief in this case, there is the real threat that Defendant will remain incarcerated beyond the legal sentence due to the additional time it will take to pursue such a remedy. Under these exceptional circumstances, we hold this case should be remanded for resentencing.

*Id.* at 463–64, 510 S.E.2d at 425. We find the exceptional circumstance carefully carved out by the *Johnston* court is not

present here. Appellant has already served the duration of her sentence; therefore, she does not face the threat of continuing incarceration beyond the legal sentence. *Johnston* does not control.

We find none of these exceptions to the general rule requiring issue preservation applicable. Having written to the point of expiation, we come to the ineluctable conclusion that we are constrained by the preservation barrier. Appellant will be forced to seek redress through the avenue of post-conviction relief. *See* Toal, Vafai, and Muckenfuss, *Appellate Practice in South Carolina* at 62 (2d ed. 2002) ("In criminal cases, although the failure of an attorney to preserve an issue at trial will preclude appellate review of that issue, it may nonetheless be a ground in a civil action for post-conviction relief as a claim of ineffective assistance of counsel.") (citing *Fossick v. State,* 317 S.C. 375, 453 S.E.2d 899 (1995)).

## CONCLUSION

Regrettably, Appellant has suffered a violation of her right to a jury trial in this case. However, because she failed to raise an objection at trial, we are compelled to let the unconstitutional sentence stand. Accordingly, the decision of the family court is

**AFFIRMED.**

BEATTY and SHORT, JJ., concur.