ARKANSAS DEPARTMENT OF HUMAN SERVICES
*v.* Deidre CLARK

91-12                                    810 S.W.2d 331

Supreme Court of Arkansas
Opinion delivered June 3, 1991

562

*Stephen C. Sipes*, for appellant.

*Griffin J. Stockley*, for appellees.

STEELE HAYS, Justice. The Arkansas Department of Human Services (DHS) appeals from an order, issued by the Pulaski County Court, Juvenile Division, holding DHS (Division of Children and Family Services) in willful contempt of an order filed May 1, 1990, in a dependency/neglect proceeding.

The order involved Ms. Deirdre Clark and her two sons. The boys had previously been placed in foster care, however, Ms. Clark was striving to regain custody. A hearing was conducted to determine what family services should be provided by DHS and the court ordered the children returned to their mother and that DHS provide certain services to the family. The court retained jurisdiction and scheduled a review hearing for April 5, 1990.

Following the review hearing, by order filed May 1, 1990, the court directed DHS to: (1) pay $5.50 monthly for medication for Ms. Clark; (2) provide bus tokens or bus credit for each individual family member; and (3) provide the full entitlement of preventative funds to Ms. Clark. DHS filed an appeal and a motion for stay. The motion for stay was denied and the order was affirmed by this Court on January 28, 1991. *See Arkansas Department of Human Services v. Clark*, 304 Ark. 403, 802 S.W.2d 461 (1991).

At a review hearing on July 5, 1990, the court found that DHS had not complied with the prior orders concerning medication, transportation and family financial concerns. A hearing was scheduled for August 2, 1990, to show cause why DHS should not be held in contempt for violations of paragraphs 5, 9, and 12 of the May 1, 1990 order. Following that hearing the court found that

DHS was in contempt and imposed a fine of $250.00.

■ The trial court did not designate whether it was holding DHS in criminal or civil contempt, however, the record reveals that the $250.00 was not imposed to compel DHS to act, rather, it was punishment of the disobedience of an order previously made. Hence, this was a criminal contempt proceeding. *See Fitzhugh* v. *State*, 296 Ark. 137, 752 S.W.2d 275 (1988).

■ In reviewing cases of criminal contempt, we consider the evidence in a light most favorable to the trial judge's decision to determine whether there is substantial evidence to support his finding. *Yarbrough* v. *Yarbrough*, 295 Ark. 211, 748 S.W.2d 123 (1988); *Lilly* v. *Earl*, 299 Ark. 103, 771 S.W.2d 277 (1989).

The Department of Human Services was found to be in contempt for violating paragraphs 9 and 12 of the May 1 order. DHS concedes noncompliance, but denies that it was willful.

Paragraph 9 of the order directed DHS to provide transportation in the form of bus tokens or credit each month for all the members of the Clark family. Ms. Nelda Barnard, services supervisor for DHS, testified concerning the failure to secure the bus tokens. She testified that DHS obtained the tokens July 20, 1990, a delay of over two months. Ms. Barnard offered no justification for the delay.

Paragraph 12 of the trial court's order called upon DHS to provide the remainder of the full entitlement of preventative funds to Ms. Clark. Ms. Billye Burke, the in-home services coordinator of field operations support unit for the Division of Children and Family Services, administered the cash assistance program referred to in paragraph 12. Ms. Burke testified she was aware after the April 5 hearing that certain cash disbursements were ordered, but explained that payment of the money was not in compliance with agency policy and could result in an audit leading to a penalty of funds reduction. Ms. Burke testified that DHS did not comply with the court's order because the DHS staff was under the impression that the case was on appeal and assumed a stay order had been obtained.

At the hearing on the contempt motion, counsel for DHS tendered $190.00 into the registry of the court to bring it into compliance with paragraph 12. Counsel took the position that

DHS did not willfully disobey the court's order because his advice subsequent to filing a Notice of Appeal led the DHS staff to assume it would not have to provide the payments while the appeal was pending.

Regarding paragraph 12, the trial court noted that the $190.00 tender was evidence the order could have been complied with. With respect to DHS's "willfulness" in disregarding the court's order, the court stated, "there are various degrees of willful as there are various types of being willful, and I think in an agency this big, you're going to have some lags in time, and we understand that. What I'm concerned with is, I think the agency just deliberately did not do very much to comply with the Court's order until pretty much the eleventh hour."

■ That was not an inapt characterization of the proof offered by DHS to explain its inaction, and while it may not have been motivated by rancor, neither was it inadvertant. We hold, therefore, there was substantial evidence to support the trial court's finding that DHS was in willful contempt of paragraphs 9 and 12 of its May 1, 1990, order. It was undisputed the order was not complied with and we find no basis for disagreement with the conclusion of the trial court that DHS's failure to act constituted willful contempt.

Another argument of DHS is that it was in substantial compliance with the order because other equivalent cash services were provided. DHS asserts that this ongoing assistance to the family is evidence that DHS did not willfully disobey the court's orders.

■ Generally, before a person or entity may be held in contempt for violating a court order, the order must be definite and distinct regarding the duties imposed. *Warren* v. *Robinson*, 288 Ark. 249, 704 S.W.2d 614 (1986). This order was clear and unambiguous. Paragraph 9 directed DHS to provide bus tokens and paragraph 12 ordered the agency to provide the balance of cash assistance to Ms. Clark. Those provisions do not direct DHS to provide alternative services and, consequently, other services may not be substituted. A holding to the contrary would allow parties to ignore specific court orders and fashion their own methods of compliance.

For its final point DHS argues that the court violated Ark. Code Ann. § 16-10-108(b)(1) (1987), by ordering a fine in excess of the statutory limitation of $50. DHS recognizes that this court has previously determined that § 16-10-108 is not a limitation on the power of the courts to impose punishment for disobedience of process, because under art. 7, § 26 of the Arkansas Constitution the legislature cannot abridge the power of the courts to punish for contempt in disobedience of their process. *Yarbrough* v. *Yarbrough, supra.* Nevertheless, DHS argues that willful disobedience of process is different from willful disobedience of a court order, to which the statutory limitation applies. We disagree that disobedience of process is different from disobedience of a court order. In *Smith* v. *Smith,* 28 Ark. App. 56, 770 S.W.2d 205 (1989), the Court of Appeals addressed the same issue. In *Smith*, the appellant was sentenced to 84 days of incarceration for violating an order regarding child visitation. In discussing the trial court's authority to sentence Mr. Smith to 84 days in jail, the Court of Appeals wrote:

> *An order of court is process*, and while the constitution delegated authority to the legislature to regulate punishment for contempt, this delegation has been construed by the Supreme Court to be in addition to and not in derogation of the inherent power of the court. Pursuant to its inherent power, the court may also punish for contempt, which includes disobedience of process. The term "process" has been defined broadly by our statutes and case law. Ark. Code Ann. § 16-55-102(a)(16) (1987) provides that "[p]rocess means a writ or summons issued in the course of judicial proceedings." Subsection (a)(23) of that provision defines "writ" as meaning an order or precept in writing, issued by a court, clerk or judicial officer. The Supreme Court has stated that "[p]rocess in the sense of the statutes is a comprehensive term which includes all writs, rules, orders, executions, warrants or mandates issued during the progress of an action." *Henderson* v. *Dudley,* 264 Ark. 697, 709, 574 S.W.2d 658, 665 (1978). [Emphasis added.]

*Id.* at 65, 770 S.W.2d at 210.

In *Hickinbotham* v. *Williams, Chancellor,* 228 Ark.

46, 305 S.W.2d 841 (1957), the Supreme Court discussed the underlying necessity for contempt powers:

> Fines and jail sentences are given, not only as punishment for disregarding the court's orders, but of equal importance, for the purpose of deterring a defendant from future disregard of such orders. Not only does such action act as a deterrent to the particular defendant charged with contempt, but also to others who might contemplate disobedience of a court order. To summarize, contempts are punishable because of the necessity of maintaining the dignity of, and respect toward, the courts, and their decrees.

*Id.* at 50, 305 S.W.2d at 843.

Thus, the statutory limitation is not applicable to judicial orders, and to hold otherwise would defeat the court's inherent power to enforce its orders.

Affirmed.