Tonya BELL *v.* Michael WARDELL

CA 99-1499 34 S.W.3d 745

Court of Appeals of Arkansas
Division IV
Opinion delivered December 13, 2000

*Montgomery, Adams, & Wyatt, PLLC*, by: *Orin Eddy Montgomery*, for appellant.

*Gordon, Caruth & Virden, P.L.C.*, by: *Bart F. Virden* and *Jeannie L. Denniston*, for appellee.

SAM BIRD, Judge. Appellant Tonya Bell brings this appeal from the Perry County Circuit Court, Third Division, contending that the court's finding that it is in the best interest of her child that the child's surname be changed from her surname to that of the child's father, appellee Michael Wardell, is clearly erroneous.

Bell and Wardell, teenagers, had a child out of wedlock. The child, RaLyn Danielle Bell, was born December 10, 1998, with severe medical problems. Wardell filed a complaint on December 29, 1998, acknowledging that he was the father of the child, seeking to establish paternity and visitation, and asking that the surname of the child be changed from Bell to Wardell. Bell answered and stated that she also wanted paternity established in accordance with state law and that she did not object to establishing visitation. However, she affirmatively pled that it would not be in the best interest of the minor child to have her surname changed because of the voluminous medical records already established in RaLyn's current surname. Bell also filed a counterclaim for child support.

Wardell testified that he is eighteen years old and lives in Morrilton. He acknowledged that he is RaLyn's father and requested that the court order her name changed from Bell to Wardell "because of the fact that she is my daughter." He agreed to pay child support and medical expenses. He stated, "I very much want a relationship with this child." He acknowledged her special medical needs and stated that he was willing to attend to any of RaLyn's special needs. He and his mother have visitation with RaLyn every Sunday. He stated that he would be joining the Marine Corps and that in his absence he would like for his mother to have visitation with RaLyn.

On cross-examination, he stated that he had his mother's maiden name. In addition, he stated that his mother visits with RaLyn more often than he does. He stated that he has held the baby almost every time he has visited and that he has changed her diaper twice. He also admitted to having a violent temper, having once

pulled a gun on Bell's brother, and to incurring several traffic tickets. He stated that he was working on calming down his temper and that that was one of the reasons he intended to join the Marine Corps.

Diane Wardell, Michael's mother, testified that she thought it was important for RaLyn to establish a relationship with both sides of her family. She stated, "She needs to know her· heritage, and where she comes from. She needs to know that we love her also. We have contributed clothes and other things to the child since she was born." She acknowledged that Wardell's birth name is Michael Dale Evans, Jr., but she stated that she changed his surname to her maiden name after she and Wardell's father divorced. She said that in order to do so, she had to prove that there had been three years of no contact with Wardell's father and that his father had not paid any child support. She testified, "When I proved that, I was able to change his name to Wardell because I wanted him to have the name of the people who loved him." In addition, she stated that Wardell had seen his father only six times since he was an infant. She also acknowledged that Wardell had missed several visitation times scheduled with RaLyn because he does not feel comfortable at Bell's home.

After Wardell rested, Bell asked that RaLyn's surname not be changed. She stated that pursuant to *Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999), Wardell has the burden of proving that it would be in the best interest of the child to have the surname changed, and that Wardell had not met that burden. The trial court stated that it would reserve its ruling.

Bell testified as to RaLyn's extensive medical problems. She also stated that on occasion when Wardell visits RaLyn, he just sits on the couch, not even looking at RaLyn. But she admitted that in the last couple of months he has begun to hold her more often, play with her, and feed her. She also stated that Wardell's mother visits every time he does and that she has spent more time with RaLyn than has Wardell. Bell maintained that when she was pregnant with RaLyn, Wardell was "constantly telling me that he wanted me to move in with him in his mother's home," but she did not want to do so. She stated that after a while, he stopped calling her and helping her with any medical expenses.

As far as the surname being changed, she testified that all of RaLyn's medical bills are in the name of Bell, and that she receives Medicaid and that those benefits are in the name of Bell. She stated that if the court ordered her to change RaLyn's name, she (Bell) would have to change all of the medical records. She stated that she assumed that the change in her name would delay medical treatment, but that no one has told her that was so. In addition, she stated that "[t]here will not be any stigma attached to RaLyn carrying my last name, but it will cause confusion to change her last name."

Based upon the testimony and the results of DNA tests, the chancellor found that Wardell is the father of the child. In addition to setting forth a visitation schedule, the chancellor ordered that Wardell pay child support and past medical expenses, that he provide insurance, and that each party be responsible for one half of the non-insured medical expenses. The order also required that Wardell undergo training that he would need to learn to care for a child with RaLyn's special needs. Finally, the order directed the Division of Vital Records to change the birth certificate to show that Wardell is RaLyn's father and that her surname is Wardell. Bell filed a motion for a new trial, which was denied, and she brings this appeal.

 Chancery courts have the power, either by statute or case law, to change a minor's name when it is in the best interest of the minor. *Moon v. Marquez*, 338 Ark. 636, 999 S.W.2d 678 (1999). When a court is determining what surname by which a child should be called, it must consider what is in the best interest of the child. *Huffman v. Fisher, supra.* When making this determination, the court should consider the following factors: the child's preference; the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; the length of time the child has borne a given name; the degree of community respect associated with the present and proposed surname; the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and the existence of any parental misconduct or neglect. *Huffman v. Fisher, supra.* This list is not exhaustive; rather, these are factors that must be considered. *Huffman v. Fisher, supra.* When reviewing a chancellor's decision with regard to the changing of a surname, this court will not reverse where the chancellor has made a full inquiry

of the implication of the factors and a determination is made with due regard to the best interest of the child. *Huffman v. Fisher, supra.* A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Huffman v. Fisher, supra.* In making this determination, the chancellor assesses the credibility of the witnesses. *Moon v. Marquez, supra.*

Bell brings this appeal, contending that the court's ruling was clearly erroneous because the chancellor decided the issue based upon factors not set forth in *Huffman v. Fisher, supra,* those being that the name should be changed to avoid the stigma of illegitimacy, and that the actions of the unwed father in seeking to take responsibility for his child should be rewarded. Bell claims that neither of these factors have anything to do with the best interest of the child. She argues that the chancellor's letter opinion merely pays "lip service" to the six factors, but manifestly does not consider them. She claims that throughout the hearing, it was assumed, with no proof, that for RaLyn to bear her mother's surname would cause embarrassment and difficulties because it would brand the child as illegitimate. In addition, she claims that the court's decision was in error because it would cause great confusion to change all of RaLyn's medical records. And finally, she argues that the chancellor should not have rewarded Wardell by changing the infant's surname to Wardell to induce Wardell to fulfill his paternal obligations. She argues that, as the moving party, Wardell did not meet his burden of proof and that RaLyn's surname should not have been changed.

In his letter opinion, the chancellor specifically stated that he had reviewed the decision of *Huffman v. Fisher, supra,* and had considered the six factors set forth in that decision. He wrote:

> Because of the young age of the minor child, several of the factors may not be applicable. The child has no preference as to her surname because she is approximately seven months old. The Court has considered whether the change of the child's surname would have any impact on the preservation and development of the child's relationship with each parent. At this state of the child's life, whether her surname is Bell or Wardell would have no effect on her relationship with either parent. The child took the mother's surname at birth, but it is important to note that the father filed a paternity action 19 days after the child's birth seeking an order of

paternity and a change of name to his surname. The Court finds that the father acted with due haste in filing the paternity complaint, and finds that the length of time the child bore the surname of Bell would have· no effect on the child. There's no evidence as to the degree of community respect associated with the present and proposed surnames. In the absence of any such evidence, the Court presumes that both the surnames are suitable. There is no evidence of any parental misconduct or neglect.

The court noted that Bell was opposed to changing RaLyn's surname because her extensive medical records bear the name of Bell and because the change of the name would cause some confusion at hospitals and with health-care providers. He noted, however, that there was no evidence presented that proved that the change of name would create substantial difficulties.

He then wrote:

The Court has considered the six factors required by *Huffman v. Fisher*, and has also considered the fact that the father promptly filed a paternity action after the child's birth seeking to be named for the father. He stated in his petition that he desired to pay child support and help raise the minor child. The Court finds, based upon these factors, ... it is in the best interest of the minor child that her surname be changed to Wardell.

In denying Bell's motion for a new trial, the chancellor entered an order, again discussing the factors set forth in *Huffman v. Fisher, supra*, and again ordering that RaLyn's surname be changed. Although he acknowledged that a change of the surname on the medical forms would not be convenient, he noted that "inconvenience on the part of the defendant should not be a basis upon which to assign a surname to a minor child."

We do not find the chancellor's decision that RaLyn's surname should be changed from Bell to Wardell to be clearly erroneous. The chancellor, in his lengthy letter opinion and his order denying a motion for a new trial, considered the polestar consideration, that being what is in the best interest of the child, as well as the six factors listed in *Huffman v. Fisher, supra*, and other factors he considered pertinent to the case at bar. The chancellor, finding that Wardell wants to be an active participant in the child's life, considered the fact that Wardell filed the paternity action only nineteen days after the child was born, that he offered to pay child

support and medical expenses, and that he and his mother have sought visitation with RaLyn. As stated above, although the court must consider the six factors enumerated in *Huffman v. Fisher, supra,* the court also has the discretion to consider other factors when determining what surname would be in the best interest of the child.

The chancellor stated that some of the factors listed in the *Huffman v. Fisher, supra,* opinion were not relevant to the case at bar, such as the preference of the child for one surname, and the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent. We agree with the chancellor's conclusion that these two factors are simply not relevant in determining whether to change the surname of a seven-month-old child. However, the chancellor's conclusion that these factors were not relevant is not equivalent to a failure to consider them. To the contrary, it is obvious that the chancellor did consider these factors and concluded that they were irrelevant to a determination of the best interests of this child in this case. Bell even concedes in her brief that the chancellor "dealt with the factors" in his letter opinion.

Affirmed.

JENNINGS and STROUD, JJ., agree.