Jaclin BOUDREAUX *v.* Jacob MAUTERSTOCK

CA 04-316                                    199 S.W.3d 120

Court of Appeals of Arkansas
Opinion delivered December 1, 2004

*Eubanks, Welch, Baker & Schulze,* by: *Darryl E. Baker* and *J. G. schulze,* for appellant.

*Danny M. Rasmussen,* for appellee.

A NDREE LAYTON ROAF, Judge. Appellant Jaclin Boudreaux appeals from the trial court's order changing her minor daughter's surname from Boudreaux to Mauterstock. On appeal, Boudreaux argues that the trial court's decision is clearly erroneous. We reverse.

Jaclin Boudreaux and Jacob Mauterstock are the parents of Kaylee, born November 30, 1997. The parties have never married, and paternity was established in April 1999. The April 1999 order established that Jacob owed child support, and he was ordered to make payments to the Office of Child Support Enforcement and to provide health insurance for Kaylee. Jacob, however, did not maintain contact with Jaclin or Kaylee, and had not established a relationship with Kaylee until 2001, when Jaclin and Kaylee returned to Arkansas from Florida and Jaclin initiated contact with Jacob. Since Jaclin and Kaylee's return to Arkansas, Jacob has established a positive relationship with Kaylee, exercising regular visitation with her and paying child support.

On June 24, 2002, Jacob filed an amended petition for change of custody, asserting that since July 2001, he has had

physical custody of Kaylee fifty percent of the time; that he enjoys a more stable lifestyle; and that he had learned to care for and nurture Kaylee. The amended petition also requested that Kaylee's last name be changed from Boudreaux to Mauterstock.

At the hearing on the petition, the trial court heard testimony from several witnesses related to the change of custody issue. Jacob testified that he is now married; that he and his wife, Erica, have a son; that he pays child support and medical expenses; and that he and Jaclin have a cordial relationship and have no problems cooperating with each other regarding visitation. There was no additional testimony presented by Jacob or any of the witnesses called on his behalf regarding his request for name change.

During presentation of her case in defense of the request for change of custody and name change, Jaclin testified only that she did not believe that Kaylee's name should be changed to Mauterstock; that Kaylee has had the name Boudreaux for six years; that Kaylee told her that she did not want her name to be changed to Mauterstock; and that there was no reason that Kaylee's name should be changed.

At the conclusion of the hearing, the trial court continued custody of Kaylee with Jaclin, but modified the visitation schedule. The trial court held that Kaylee's name should be changed from Boudreaux to Mauterstock, stating, "[I]f there was ever going to be a name change, now would be the time to do it. Keelee [sic] is not going to get any younger. You know, if we go on longer and decide at a later time then those negative issues would arise so I'm going to grant the motion to change her last name to Mauterstock." Counsel for Jaclin requested further findings from the trial court on the name change issue, and the trial court found:

> [s]he clearly wants Mr. Mauterstock to have a relationship with the child . . . he has had a relationship with the child. In fact, part time having half custody of the child. We looked at those circumstances that you talked about, we've all discussed that neither one of them have a negative connotation with either last name. There would be no embarrassment to the child to have either last name. While she's had the name for almost six years, if we were to change it when she's twelve years old, that might be a little different, but you know, the only people that she's been Boudreaux with are her family. She's had little time at school. That can be done at school without a great deal of difficulty. He's paid child support, he is

trying to maintain a relationship with his child and it is real hard for someone to understand that this is my daddy but he has a different last name than I do.

Regarding the last finding, counsel for Jaclin requested that the trial court consider that changing Kaylee's name to Mauterstock would have the same effect on her because she would then have a different last name from her mother. The trial judge responded that the decision would remain; however the trial court's order stayed implementation of the name change pending this appeal.

■■ Where an order has been entered changing a minor child's surname, the proper question on appeal is whether the party has demonstrated that such a change is in the best interest of the child considering factors enumerated in *Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999). The factors are: (1) the child's preference; (2) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (3) the length of time the child has borne a given name; (4) the degree of community respect associated with the present and proposed surnames; (5) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; (6) the existence of any parental misconduct or neglect. *Id.* This list is not exhaustive, and the trial court may consider other relevant factors when determining which surname would be in the child's best interest. *Bell v. Wardell*, 72 Ark. App. 94, 34 S.W.3d 745 (2000).

■■ In cases involving change of a minor child's surname, the moving party has the burden of demonstrating that the change is in the child's best interest. Where there is a full inquiry into the implication of the *Huffman* factors and a determination is made with due regard to the best interest of the child, the trial court's decision will not be reversed unless it is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

■ With these principles in mind, we consider the case before us. In this instance, Mauterstock presented no evidence regarding his request for name change other than what could be gleaned from the testimony regarding his petition for change of

custody. There was no evidence whatsoever presented on several of the factors to be considered by the trial court. Moreover, the mere fact that the child would have a last name different from her father does not establish that it is in her best interest that her name be changed. Accordingly, Mauterstock had the burden of proving that a name change is in Kaylee's best interest, and, considering the *Huffman* factors, Mauterstock did not go forward with evidence sufficient to meet that burden. The trial court did not have before it an adequate inquiry into the implications for the minor child of the name change, and the decision granting the name change under these circumstances is thus clearly erroneous.

Reversed.

BIRD and ROBBINS, JJ., agree.