## Donald L. NORMAN *v.* Jaunita COOPER

CA 07-247                                                              278 S.W.3d 569

Court of Appeals of Arkansas
Opinion delivered March 5, 2008

*Lynn Frank Plemmons*, for appellant.

*Tom Allen*, for appellee.

L ARRY D. VAUGHT, Judge. The genesis of this appeal was a divorce complaint filed by appellee Juanita Cooper on August 9, 1994. On September 27, 1994, Cooper was granted an uncontested divorce and awarded custody of the parties' minor children, and appellant Donald Norman was awarded visitation. Although the divorce was granted and an agreement regarding visitation and support was accepted by the court, the parties continued to live together for approximately one year thereafter, at which point they finally and permanently separated. The parties engaged in sporadic litigation in the ensuing years, with Norman claiming to have been denied visitation and Cooper claiming not to have been paid child support. Following an agreement to resolve their issues, Norman exercised visitation twice in 1996. However, Norman has had no visitation with his children since 1996.

In September 2004, the Office of Child Support Enforcement sought to collect child support arrears on behalf of Cooper in Prairie County Circuit Court. However, Child Support Enforcement dismissed the case and closed its file at the request of Cooper. Norman continued the action in Prairie County seeking a finding of contempt against Cooper and an order to enforce visitation. Due to the fact that Cooper and her children had moved to Independence County, she objected to the case being set for a hearing in Prairie County. Consequently, Norman requested that the case be transferred to the Circuit Court of Independence County.

Following Norman's transfer request, a hearing was scheduled in Independence County for January 6, 2006, and notice was sent to Cooper via her attorney, Jill Blankenship. After Cooper's counsel received notice, by order entered on December 21, 2005, Blankenship was permitted to withdraw as counsel. (The record does not explain why Blankenship was allowed to withdraw so close to the date of the hearing.) Neither Cooper nor her counsel attended the hearing. Norman, accompanied by his counsel, was present at the hearing.

As the hearing began, the trial judge, the Honorable Tim Weaver, recalled that he had previously been consulted, in his capacity as a private attorney, about the parties' dispute in relation to a step-parent adoption question. As such, he decided to recuse from the matter and requested that Judge John Norman Harkey accept the case and continue the hearing.

Judge Harkey accepted the case and summoned Cooper's former counselor, Jill Blankenship, who acknowledged receipt of the notice of the hearing and gave the court Cooper's telephone number. The trial court permitted the hearing, but informed the parties that it would be treated as an ex parte hearing. At the conclusion of the hearing, the court ordered that visitation with Norman commence immediately. On January 6, 2006, the order was filed and served on Cooper. In response to the ordered visitation, as noted by Judge Harkey, there was "correspondence from one of the children, a petition for contempt, a counter-petition for contempt, a medical report, interrogatories, and lots of paper work; . . . the children are now, respectively, 15 years old and 14 years old; and . . . these matters are now [set] for what the Court hopes is a final hearing."

A full hearing was held on July 28, 2006. Following this hearing, the trial court found both parties to be in contempt of court and took the other issues under advisement. In a judgment entered on November 14, 2006, the trial court found that Norman owed a child-support arrearage in the amount of $25,000, and was in contempt for willfully and intentionally disobeying the court's order by failing to provide child support for his minor children. Norman was ordered to jail for sixty days, and thereafter "an automatic pickup order" would be issued if he missed any support payments.[1] Norman was also ordered to pay Cooper $2,000 in attorney's fees. Finally, the trial court found Cooper to be in contempt (for violating the visitation order) and ordered her to serve a term of seventy-two hours in jail. Only Norman appealed.

█ Norman first argues that the trial court erred in its display of bias against him and by "acting upon said bias in its rulings." Although the great majority of Norman's brief is dedicated to this allegation of error, we are unable to reach the merits of his claim because he makes this argument for the first time on appeal. Our supreme court has repeatedly held that appellants are precluded from raising arguments on appeal that were not first brought to the attention of the trial court. *See, e.g., Green v. State,* 365 Ark. 478, 231 S.W.3d 638 (2006). Issues raised for the first time on appeal will not be considered because the trial court never had an opportunity to rule on them. *Id.* A party cannot change the

---

[1] He was ordered to pay $52.00 per week for his current obligation and $10 per week toward his past obligation, with his first payments due August 4, 2006.

grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Lewis v. Robertson*, 96 Ark. App. 114, 239 S.W.3d 30 (2006). Because Norman's allegation of trial-court bias was not raised and decided below, we are precluded from reaching its merits now. *Id.*

Next, Norman argues that the trial court erred by allowing appellee to solicit testimony on cross-examination relating to his prior incarceration for failure to pay child support in an unrelated case. At trial, Cooper's counsel asked Norman "How many times did you go to jail because of support problems with Ms. Francis?" Norman's counsel objected, claiming the evidence was "not relevant." The objection was overruled, and Norman answered that he "went to jail one time because of support problems with Ms. Francis." Norman also noted that he "stayed in jail for 40 days . . . for nonpayment of support." Cooper's counsel followed up by asking when the incarceration occurred. Norman's counsel responded that he would like to "[r]enew the objection." Once again, the objection was overruled and Norman answered "1989, I believe."

■ On appeal Norman concedes that the "question is plainly relevant as defined in Rule 404 of the Rules of Evidence," but argues that it was not "admissible pursuant to Rule 402, and not allowable pursuant to Rule 404(b)." Specifically, he argues that evidence of other "crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, Norman's only objection below was to the relevance of the inquiry — a point that he now concedes. Because we cannot reach the merits of newly crafted appeal arguments where the trial court was neither put on notice of the alleged error nor given the opportunity to right the wrong, we affirm on this point without considering the merit — or lack thereof — of Norman's prior-bad acts argument. *See Burford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006).

■ Norman also claims that the trial court erred in its decision to treat the January 6, 2006, proceeding as an ex parte hearing. This hearing was held at the request of Norman. He attended, as did his counsel. The trial court explained at the outset of the hearing that because neither Cooper nor her counsel were present, it would be considered an ex parte proceeding. Norman made no objection to the trial court's ex parte designation at the time. The trial court then entered an order granting Norman

immediate visitation with his children — the precise relief that he had requested. Although, as previously discussed, we are prohibited from addressing Norman's claim of error because it is made for the first time on appeal, we are confounded by what possible wrong Norman might have suffered by being granted the immediate relief that he requested following a hearing where he was the only party in attendance.

For his fourth point on appeal, Norman claims that the trial court failed to apply the doctrine of unclean hands or alternatively the principle of equitable estoppel. Because this argument is made for the first time on appeal and Norman is precluded from raising arguments on appeal that were not first brought to the attention of the trial court, we do not consider this argument on its merits. *Green, supra.*

Next we consider Norman's claim of error surrounding the trial court's decision to grant Cooper's petition to change the surname of the minor children from Norman to Cooper. In cases involving a name-change order, where there has been a full inquiry into the factors supporting the proposed change and the trial court has determined it is in the child's best interest to grant the change, we will not reverse unless the decision is clearly erroneous. *See Boudreaux v. Mauterstock*, 88 Ark. App. 389, 199 S.W.3d 120 (2004). These relevant factors include, but are not limited to, the child's preference; the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; the length of time the child has borne a given name; the degree of community respect associated with the present and proposed surnames; the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and the existence of any parental misconduct or neglect. *Id.* The trial court may consider other relevant factors when determining which surname would be in the child's best interest. *Id.*

Here, the evidence established that although the children's step-father had at one point expressed an interest in adopting them, an adoption had not occurred. The record also showed that 1) the children manifested a strong desire to change their name to Cooper; 2) they had two siblings with the surname Cooper; 3) they had a close familial relationship with both their stepfather and his parents (who also bear the name Cooper); and 4) their natural father had failed to contact them or pay child support for a ten-year

period. Based on these facts, particularly their strong desire to have the name Cooper and the extraordinary misconduct and neglect of their natural father, it cannot be said that the trial court was clearly erroneous in its decision that the name change was in the children's best interest. As such, we affirm on this point.

■■ Norman also claims that the trial court erred in its decision to not reduce or abate Norman's child-support obligation following its conclusion that Norman had failed to prove by a preponderance of the evidence that he was disabled (he claimed to suffer from lyme disease) and was therefore unable to seek employment. At the hearing Norman anchored his disability claim on two letters that he introduced into evidence, one that outlined the symptoms of lyme disease and another that stated he could not safely climb a ladder or perform work as a pipe fitter. However, neither letter indicated that Norman was disabled. As such, we see no error in the trial court's conclusion that Norman failed to prove that he was disabled. Norman's child-support-reduction/abatement argument further alleges that the trial court misapplied Administrative Order No. 10 (imputing to him an income based on minimum wage) after finding that Norman was unemployed. He argues that the court should have followed Order 10(c), which is reserved for those who are self-employed. However, the proof at trial showed that Norman was not self-employed; rather, he was unemployed. As such, the court made no error in its income calculations, and we affirm on this point.

Norman next argues that the trial court erred in sentencing him to sixty days in jail for contempt because a thirty-day sentence is the maximum allowed by law. Indeed, Arkansas Code Annotated section 5-4-201(b)(3) (Supp. 2005), describes contempt as a class C misdemeanor with punishment limited to a maximum of thirty-days incarceration and a fine of $100. Therefore, Norman is correct in his claim the trial court had no *statutory* authority to impose a sixty-day sentence for criminal contempt. However, Article 7, Section 26 of the Arkansas Constitution provides, "The General Assembly shall have power to regulate by law the punishments of contempts; not committed in the presence or hearing of the courts, or in disobedience of process." The last word of this article — "process" — has been construed so broadly that it encompasses virtually anything a court does. *See Osborne v. Power,* 322 Ark. 229, 908 S.W.2d 340 (1995) (finding that process is a comprehensive term that includes all writs, rules, executions,

warrants or mandates issued during the progress of an action); *Ark. Dep't of Human Servs. v. Clark*, 305 Ark. 561, 810 S.W.2d 331 (1991)(concluding that willful disobedience of an order is no different than willful disobedience of process and the statute does not apply); *Smith v. Smith,* 28 Ark. App. 56, 770 S.W.2d 205 (1989) (stating that an order of the court is process). Thus, there is little or nothing left of the specifically reserved power to regulate contempt of court granted to the General Assembly by the Arkansas Constitution.

Norman violated an order of the court when he failed to make child-support payments. Although his violation was an indirect contempt, committed outside of the court's presence, it was by definition a violation of process. The court has the inherent authority to punish Norman, and the will of our General Assembly is not a limitation on the power of the court to inflict reasonable punishment for disobedience of process. Such power cannot be removed by laws to the contrary. *See Ark. Dep't. of Human Servs. v. Clark,* 305 Ark. 561, 810 S.W.2d 331 (1991). Therefore, because Norman was sentenced pursuant to the court's inherent authority to punish violations of court processes, we affirm the sentence.

Finally, Norman contends that the trial court erroneously failed to enforce visitation. However, because Norman agreed to the arrangement at trial, noting that he did not want to force his children to enter into a relationship with him, but he also did not want them prevented from contacting him if they so desired, he cannot claim error on appeal. Not only did Norman fail to object to the visitation arrangement set out by the trial court — he suggested it in the first place. As such, we see absolutely no merit in this argument, and affirm the trial court's decision.

Affirmed in all respects.

GRIFFEN and BAKER, JJ., agree.