2011 Ark. App. 439

**Lemuel David WALKER, Appellant**

v.

**Richard B. BURTON and Julie Burton, Appellees.**

**No. CA 10–1282.**

Court of Appeals of Arkansas.

June 15, 2011.

David L. Beatty, Lewisville, for appellees.

DOUG MARTIN, Judge.

Appellant Lemuel David Walker appeals the order of the Lafayette County Circuit Court granting a petition filed by Richard Bruce Burton and Julie Burton seeking to modify a previous custody order and to change the last name of Walker's biological son, E.A., to Walker Burton. We affirm.

E.A. was born on February 5, 2003, to Walker and his wife, Jacey Walker. Pamila Burton was Jacey Walker's mother, and Bruce Burton was Jacey's stepfather. On January 5, 2004, the Lafayette County Circuit Court entered an order granting permanent custody of E.A. to Bruce and Pam. Pam died on May 25, 2005, but Bruce continued to have custody of E.A. after that time. In October 2006, Bruce married Julie Burton, who had been E.A.'s caregiver and nanny since the fall of 2003.

Jacey died in February 2009, and Walker was incarcerated in March 2009 as the result of a "conviction that was related to [Jacey's] death."[1] On November 17, 2009, Bruce and Julie filed a petition for modification of custody and for a name change, seeking to have Julie added as a permanent custodian of E.A. and to change E.A.'s last name from Walker to Walker Burton. Walker filed a pro se objection to the petition, but after a hearing on June 18, 2010, the circuit court entered an order on July 12, 2010, granting Bruce and Julie's petition. On appeal, Walker raises two arguments: 1) that the circuit court's ruling violated his due-process rights, and 2) that the court erred in finding that it was in E.A.'s best interest to change his surname.

In cases involving change of a minor child's surname, the moving party has the burden of demonstrating that the change is in the child's best interest. Where there is a full inquiry into the implication of the factors enunciated in *Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999) (*Huffman I*), and a

---

1. Walker was convicted of third-degree battery and abuse of a corpse.

determination is made with due regard to the best interest of the child, the trial court's decision will not be reversed unless it is clearly erroneous. *Boudreaux v. Mauterstock,* 88 Ark.App. 389, 199 S.W.3d 120 (2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

■ In his first argument on appeal, Walker argues that he was denied due process of law when the Burtons changed E.A.'s surname to Burton without giving notice to Walker and ₃without giving him the opportunity to defend his fundamental parental rights. Citing *Carroll v. Johnson,* 263 Ark. 280, 565 S.W.2d 10 (1978), Walker urges that a natural father has standing to challenge a proposed name change of his minor child; should be accorded the right to a hearing and to protection against a name change for his minor child; and has a basic and fundamental protectable interest in his child's name. Noting testimony at the circuit court hearing that E.A. had been listed on his class rolls as "E.A. Burton" for some time before the name-change petition was filed, Walker asserts that he was denied the opportunity to defend his fundamental parental rights.

■ We decline to reach the merits of this argument because Walker failed to raise it below. Our courts have made it abundantly clear that we will not consider an argument, even a constitutional one, raised for the first time on appeal. *See, e.g., Jones v. Ark. Dep't of Human Servs.,* 361 Ark. 164, 205 S.W.3d 778 (2005); *Myers v. Ark. Dep't of Human Servs.,* 91 Ark.App. 53, 208 S.W.3d 241 (2005). Although Walker insists in his reply brief that he raised an appropriate objection at the hearing "even though he did not invoke the talismanic phrase 'due process of law,' " a review of the record reveals that he failed to raise his due-process or constitutional argument before the trial court. As the trial court was not afforded an opportunity to consider Walker's due-process argument, this court will not address it on appeal.

■ In his second point on appeal, Walker contends that Bruce and Julie failed to meet their burden of proving the factors enunciated by the supreme court in *Huffman I,* and the trial court thus erred in granting the name-change petition. In *Huffman I,* the supreme court ₄held that, in order to successfully petition to change a minor child's surname, the moving party has the burden of demonstrating that such a change is in the best interest of the child. *Huffman I,* 337 Ark. at 69, 987 S.W.2d at 274. In determining the child's best interest, "which must ultimately be the controlling consideration in any change in status," the circuit court "should consider at least the following factors":

(1) the child's preference; (2) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (3) the length of time the child has borne a given name; (4) the degree of community respect associated with the present and proposed surnames; (5) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (6) the existence of any parental misconduct or neglect.

*Id.* at 68, 987 S.W.2d at 274. As noted above, where a full inquiry is made by the circuit court of the implication of these factors and a determination is made with due regard to the best interest of the child, the court's decision will be upheld so long as it is not clearly erroneous. *Id.* at 69, 987 S.W.2d at 274; *see also Sheppard v.*

*Speir*, 85 Ark.App. 481, 157 S.W.3d 583 (2004).

In the present case, the circuit court's order explicitly stated that the *Huffman* factors had been satisfied and that it was in the child's best interest to grant the name-change petition. Evidence was introduced at the hearing that supported each factor. For example, regarding the child's preference, Bruce testified that he had talked to E.A. about changing his name, and the child indicated to Bruce that he wanted his last name to be Burton. Walker offered no firm testimony to the contrary, stating only that he would assume that the child would prefer to stay a Walker because he was born that way.

The second factor is the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent. Walker testified at the hearing that the last time he saw E.A., the boy was "probably three or four months old." Although he stated that it was his intention in the future to integrate E.A. into his life, he acknowledged that the Burtons had been E.A.'s permanent custodians since 2004, when the child was three months old. Bruce testified that, when he first obtained custody of E.A., the Arkansas Department of Human Services arranged for visitations with Walker, but those visitations "fell apart" when E.A. was "just really an infant." Bruce further said that he had not seen anything since E.A. had come into his custody that showed that Walker had made any attempt to develop a relationship with the child. Bruce noted that when Jacey died, he spoke to Walker about the importance of E.A.'s knowing who his father was, but nothing ever developed after that. The evidence thus tended to show that changing the child's name would have little effect on the preservation and development of the child's relationship with his remaining parent, because there was hardly a relationship there to begin with.

Regarding the length of time the child has borne a given name, Bruce testified that, although E.A.'s official school records and social security card still listed his last name as Walker, the boy had been using the name Burton since Bruce moved the family to the Spring Hill community in May 2009. Bruce said that all of the children in his school knew E.A. as E.A. Burton.

The court also considered evidence pertaining to the degree of community respect associated with the present and proposed surnames. Bruce testified that he felt that the Burton name carried respect in the Spring Hill community. Walker testified that there was "nothing wrong with the Burton name" and even agreed that there was a degree of community respect enjoyed by the Burtons in Lafayette County. Conversely, Walker acknowledged that, given the circumstances of E.A.'s mother's death and Walker's own convictions related to her death, it could "make it harder on [E.A.] at school if the school kids found out about it." Walker also conceded that he had been in prison "probably . . . half of [his] adult life."

There was also testimony regarding the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname. In addition to Walker's concession described above, Bruce testified that, while he did not know of any incidents that had happened yet with E.A.'s classmates, he expressed concern that the other children could find out the circumstances of E.A.'s mother's death and be "cruel" and "tease." Bruce said that he did not want other children "saying E.A.'s daddy was a jailbird and hurting his feelings." Bruce also said it was difficult for him to explain to other parents why he and E.A. had different last names.

Finally, regarding the existence of any parental misconduct or neglect, it was undisputed that Walker was in prison for abusing the corpse of E.A.'s mother. Moreover, Bruce testified that Walker had not made any serious attempts at visiting E.A., and he also related one incident "when E.A. was probably two months old when [Walker] took off with him in his pickup truck and he was intoxicated."

The supreme court has noted that, "[u]ltimately, the [circuit court] can only weigh the factors for which the parties provide evidence or that are relevant under the circumstances." *Huffman v. Fisher*, 343 Ark. 737, 750, 38 S.W.3d 327, 334 (2001) (*Huffman II*). In this case, the circuit court had before it evidence on each of the original *Huffman* factors and clearly gave weight to the pertinent portions of the testimony. At the end of the hearing, the court conceded that it was a difficult decision and acknowledged Walker's "very real and very important" feelings on the subject. The court concluded, however, that the most important thing was to focus on E.A. and what was best for the child's well-being. Accordingly, the court found that the child's name should be E.A. Walker Burton until he reached the age of majority. The court noted that if Walker made progress in his life, the boy would possibly want the Walker name back; for that reason, and in the hopes that it would happen, the court determined that "his entire Walker name should remain there and Burton will be added."

On these facts, we cannot conclude that the trial court's decision was clearly erroneous, and we thus affirm.

Affirmed.

ROBBINS and BROWN, JJ., agree.