SLIP OPINION

Cite as 2017 Ark. 157

# SUPREME COURT OF ARKANSAS

**No.** CR–16–969

| | |
|---|---|
| JIMMY C. MORRIS, JR.<br><br>APPELLANT | **Opinion Delivered:** April 27, 2017 |
| V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | APPEAL FROM THE DREW COUNTY CIRCUIT COURT<br>[NO. 22CR–2016–16–3]<br><br>HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE<br><br>AFFIRMED AS MODIFIED. |

**ROBIN F. WYNNE, Associate Justice**

Attorney Jimmy C. Morris, Jr., appeals from an order of the Drew County Circuit Court finding him in contempt for failing to appear on time for a first-degree-murder trial and fining him $4,000. On appeal, he contends that there is no evidence that he willfully disobeyed the circuit court's scheduling order and, if this court rejects that argument, that the fine should be vacated because it is grossly excessive and does not bear a reasonable relationship to the nature and gravity of his conduct. We affirm the circuit court's contempt finding but reduce the amount of the fine to $2,000.

The facts of this case are essentially undisputed. Appellant was Demarcus Veasey's defense attorney, and Veasey's three-day jury trial on a first-degree murder charge was set to begin at 9:00 a.m. on June 7, 2016. Pursuant to the circuit court's scheduling order, the prosecution and defense counsel were to be present in the court's chambers at 8:30 a.m. on the first day of trial. The record reflects that appellant had not arrived by 8:30 and had not

notified the court or anyone else present, including his client, that he would be late. At 9:03, the court informed the prospective jurors that there would not be a trial that day due to defense counsel's failure to appear. After the court had explained the situation and just as the clerk was about to call the roll so that jurors could be compensated, appellant entered the courtroom at 9:08. After the jury panel had been dismissed, the court asked appellant why he should not be held in contempt for failing to appear at 8:30. Appellant explained that he was late because he had had to drop his eight-year-old daughter off at a summer camp. He said that he dropped her off in Little Rock at 7:31 a.m. When the court asked if he had called anyone to let them know he responded, "We attempted to call, Judge." Appellant elaborated that he "had to choose between two evils: endangering the welfare of a minor by leaving them with nobody or being here." He was "hoping that the court would just overlook" him being a little late. Appellant blamed poor cell-phone service from Pine Bluff to Monticello as part of the reason he and his assistant were unable to contact anyone. Neither Morris nor his assistant attempted to call after 8:30; instead they "just kept coming, trying to get here."

In the ensuing discussion, the circuit court indicated that the outcome would likely have been different had appellant notified the court that he would be late or had his tardiness been due to some emergency. As it was, appellant conceded that he knew when he dropped his daughter off at camp that he would be late. The circuit court found as follows:

> In any event, this is the Court's decision: Because of the fact that you were late; because of what it cost the State, because it cost your client his right to be tried today; because of the time it cost the Court; and the inconvenience to the State, and all these witnesses, which could have been easily avoided, the Court does believe that you are in willful contempt. Whether it was your intent or not, you certainly knew

− − had reason to believe that this Court wouldn't walk out here at nine o'clock − − and you knew you wouldn't be here at that time.

And the cell phone business, if you say that's the case, I've simply not had that experience and I have the same carrier.

What to do is this: the Court had considered at first 24 hours in jail plus a fine. I don't believe, however, since this is a first offense before this Court, although it is an egregious offense, that the 24 hours in jail would be appropriate for this reason. I think that there is something about jail that takes someone's pride and I'm not here to do that to you. I do believe that a substantial fine is in order. There was a great cost to the State, a great inconvenience to this Court; and I'm sure the jury left wondering what in the world has the legal system come to when there's a first-degree murder case and without explanation, the defendant's lawyer has not shown up at 8:30 when ordered or at 9:00 at jury selection. Therefore, there will be a fine in this case and this fine will be in the amount of $4,000.

Appellant objected and stated that even if he had to pay witness fees and the jury fees the fine would amount to under $1,000; he told the court that he could not afford a $4,000 fine. The court explained that appellant was the first attorney to fail to appear, that he had shut down trials of other cases that would have otherwise been heard that day, and that he did so without a reasonable excuse. Morris asked the court to reduce the fine. The court declined to "bargain" and rescheduled Veasey's trial for the week of July 19, 2016. A written order was entered on June 7, 2016, finding appellant in contempt for the reasons stated at the hearing and fining him $4,000 to be paid within ninety days to the Circuit Clerk of Drew County. This timely appeal followed.

## I. *Willfulness*

On appeal, appellant first argues that the trial court erred by finding him in criminal contempt because his behavior did not constitute a willful violation of the court's scheduling

SLIP OPINION

order.[1] He cites Arkansas Code Annotated section 16-10-108(a)(3) (Repl. 2010), which provides that "[e]very court of record shall have power to punish, as for criminal contempt, persons guilty of the following acts and no others . . . [w]illful disobedience of any process or order lawfully issued or made by it." He states that there is no evidence that he "willfully chose to arrive thirty-eight minutes late to court for the purpose of defying the court's scheduling order."

The standard of review in a case of criminal contempt requires this court to view the record in the light most favorable to the circuit court's decision and to sustain that decision if it is supported by substantial evidence and reasonable inferences. *Perroni v. State*, 358 Ark. 17, 25, 186 S.W.3d 206, 211 (2004) (citing *Etoch v. Simes*, 340 Ark. 449, 10 S.W.3d 866 (2000)). Here, it is undisputed that appellant was significantly late for a first-degree-murder trial and that his tardiness was due to poor planning and not any medical or other unavoidable emergency. Thus, his violation of the scheduling order was not inadvertent, but was the result of his conscious decision to allow himself only fifty-nine minutes to drive from Little Rock to Monticello, a distance of eighty-nine miles. Appellant's arguments on this point are based on his contention that he did not intend to be late and his characterization of his situation as involving "unexpected" child-care issues; they are unpersuasive. Considering the evidence in the light most favorable to the circuit court's

---

[1] As the parties agree, the contempt in this case was criminal in nature. The $4,000 fine is unconditional and is to be paid to the court. Thus, the punishment is punitive in nature as it has no coercive or compensatory aspect. *See James v. Pulaski Cty. Circuit Court, Fifth Div.*, 2014 Ark. 305, 439 S.W.3d 19; *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988).

SLIP OPINION

decision, the court had substantial evidence before it with which to conclude that appellant was in willful contempt of its scheduling order. We affirm on this point.

## II. *Fine*

For his second point on appeal, appellant argues that even if this court disagrees with his argument regarding the contempt finding, this court should nevertheless vacate the $4,000 fine because it is "grossly excessive, and it bears no reasonable relationship to the nature and gravity of [his] conduct." Appellant cites Arkansas Code Annotated section 16–10–108(b)(1), which provides that criminal contempt is a Class C misdemeanor. The fine for a Class C misdemeanor is not to exceed $500. *See* Ark. Code Ann. § 5-4-201(b)(3) (Repl. 2013).

The Arkansas Constitution provides: "Indirect contempt. The General Assembly shall have power to regulate, by law, the punishment of contempts not committed in the presence or hearing of the courts, or in disobedience of process." Ark. Const. art. VII, § 26. Under our precedent, disobedience of process is no different from disobedience of a court order. *Ark. Dep't of Human Servs. v. Clark*, 305 Ark. 561, 810 S.W.2d 331 (1991). This court has held that a judge's power to punish for criminal contempt is not limited by section 16-10-108. *Johnson v. Johnson*, 343 Ark. 186, 198, 33 S.W.3d 492, 499 (2000). Moreover, this court specifically interpreted section 16-10-108(a)(3) (willful disobedience of a judge's order) and held that it is not a limitation on the inherent power of the court to impose a punishment for disobedience of the court's process or order in excess of the statutory provisions. *Id.* (citing *Yarbrough v. Yarbrough*, 295 Ark. 211, 748 S.W.2d 123 (1988)); *see also Spight v. State*, 155 Ark. 26, 243 S.W. 860 (1922) ("The Legislature cannot

abridge the power of courts to punish as for contempt in disobedience of their process. The Constitution specially reserved this inherent power in the courts, when delegating authority to the Legislature to regulate punishments for contempts."). Here, the court was punishing appellant for willful disobedience of a court order. The court was acting under its inherent power and was not limited by the General Assembly's classification of criminal contempt as a Class C misdemeanor. Accordingly, we reject appellant's argument that the circuit court was constrained by the $500 limit that the legislature has authorized for a Class C misdemeanor.

The question remains whether the $4,000 fine was an abuse of the court's discretion. *See Conlee v. Conlee*, 370 Ark. 89, 98, 257 S.W.3d 543, 551 (2007) (stating that in contempt cases, the trial court has discretion to fashion the punishment to fit the circumstances). The purpose of a criminal contempt proceeding is to preserve the power and vindicate the dignity of the court and to punish for disobedience of its order. *Fitzhugh v. State*, 296 Ark. 137, 138–39, 752 S.W.2d 275, 276 (1988). This court's power to modify punishment imposed for contempt has been recognized in numerous cases. *Carle v. Burnett*, 311 Ark. 477, 484, 845 S.W.2d 7, 11 (1993) (citing cases). For example, in *Carle*, this court affirmed a finding that an attorney who willfully refused to proceed to trial was in contempt, but modified his sentence of ninety days in jail to five days in jail and a fine of $500. This court has recognized that the principal justification for contempt lies in the need for upholding public confidence in the majesty of the law and in the integrity of the judicial system, and when we have found these ends will be met despite a reduction or even a remission of a jail

sentence for contempt, it has been our practice to modify the judgment. *McCullough v. State*, 353 Ark. 362, 367, 108 S.W.3d 582, 585 (2003) (citing cases).

What is appropriate under the circumstances will necessarily vary based on the specific facts of each case. Appellant cites *Valley v. State*, 2016 Ark. 443, 505 S.W.3d 674, in which an attorney was found in criminal contempt for failing to appear for his client's jury trial; the court fined Valley $500 and ordered him to repay the clerk for $885 in juror costs and to repay the prosecutor's office $114.80 in restitution. Appellant argues that there is "nothing rational" about the disparity in the amount that Valley was ordered to pay for willfully failing to appear and the amount he was ordered to pay for being thirty-eight minutes late. After carefully considering the particular facts of this case, we believe that the purpose of the contempt punishment will be accomplished by a lesser fine. Accordingly, we modify the judgment to reflect a $2,000 fine for contempt.

Affirmed as modified.

BAKER, HART, and WOMACK, JJ., concur in part and dissent in part.

**KAREN R. BAKER, Justice, concurring in part and dissenting in part.** I agree that there is substantial evidence to support Morris's conviction for criminal contempt. However, I dissent from the majority's decision to modify Morris's contempt fine to $2,000. Instead, I would modify the fine to $500 based on the following analysis.

Ark. Code Ann. § 16-10-108 (b)(1) provides that punishment for contempt is a Class C misdemeanor. Ark. Code Ann. § 5-4-201(b)(3) states that a defendant convicted of a Class C misdemeanor may be sentenced to pay a fine not exceeding five hundred dollars ($500). Accordingly, I would fine Morris to an amount within the Class C misdemeanor range and modify the amount to $500. *See Carle v. Burnett*, 311 Ark. 477, 482–83, 845 S.W.2d 7, 10 (1993) (The circuit court held Carle in contempt, acknowledged that although the court was not bound by the statutory limit for a range of punishment, the circuit court judge stated that he would work within the range of penalties used for Class A misdemeanors); *see also Ark. Dep't of Human Servs. v. Gruber*, 39 Ark. App. 112, 839 S.W.2d 543 (1992); *Carle, supra*; *Hodges v. Gray*, 321 Ark. 7, 14, 901 S.W.2d 1, 4 (1995); *Etoch v. State*, 332 Ark. 83, 87, 964 S.W.2d 798, 800 (1998); *Etoch v. Simes*, 340 Ark. 449, 450, 10 S.W.3d 866, 867 (2000); *James v. Pulaski Cty. Circuit Court, Fifth Div.*, 2014 Ark. 305, 439 S.W.3d 19; *Valley v. State*, 2016 Ark. 443, 3, 505 S.W.3d 674, 676 (Fines imposed pursuant to Ark. Code Ann. § 16-10-108 not exceeding $500). Further, based on the specific facts in Morris's case and his contemptuous actions, $500 is a reasonable amount.

Therefore, I concur in part and dissent in part.

WOMACK, J., joins.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part**. I agree that there is substantial evidence to support Mr. Morris's conviction for criminal contempt. Nonetheless, I cannot agree that the sanction imposed was proper. I therefore respectfully dissent.

SLIP OPINION

I cannot agree that it is proper for the majority to adopt the State's argument that "a judge's power to punish for criminal contempt is not limited by Arkansas Code Annotated section 16-10-108." I am mindful that the proposition is supported by *Johnson v. Johnson*, 343 Ark. 186, 198, 33 S.W.3d 492, 499 (2000). However, the General Assembly legislatively overruled that case when it amended section 16-10-108 to make criminal contempt a Class C misdemeanor. Section 16-10-108 comports with the Arkansas Constitution; article 7, section 26 states, "The General Assembly shall have power to regulate, by law, the punishment of contempts; not committed in the presence of or hearing of the courts, or in disobedience of process." Obviously, as noted by the majority, all of Mr. Morris's contempt occurred when he was not in the courtroom.

Accordingly, punishment for Mr. Morris's tardy arrival at court was capped at $500 by section 16-10-108. It is axiomatic that sentencing in Arkansas is entirely a matter of statute. *E.g.*, *Ward v. Kelley*, 2016 Ark. 471, 506 S.W.3d 224 (citing *Esry v. State*, 2014 Ark. 539, at 3–4, 453 S.W.3d 144, 146–47 (per curiam)). Further, we routinely hold that no sentence shall be imposed other than as prescribed by statute. *Id.* Moreover, we unwaveringly state that an illegal sentence is any sentence that exceeds the statutory maximum for the offense for which the defendant was convicted and that the sentence may be challenged at any time. *Id.* In the case before us, the $4000 sanction that the circuit court imposed exceeded the maximum fine of $500 allowed by statute for a Class C misdemeanor. Ark. Code Ann. § 5-4-201(b)(3).

I am mindful that when a person is found in criminal contempt, restitution may be ordered. *See, e.g.*, *Valley v. State*, 2016 Ark. 443, 505 S.W.3d 674. However, before being

ordered to pay restitution, I contemnor, like any other criminal defendant, is entitled to due process. In the case before us, due process requires that the court follow the applicable statute. Restitution in criminal cases is governed by Arkansas Code Annotated section 5-4-205. In pertinent part it states:

> (a)(1) A defendant who is found guilty or who enters a plea of guilty or nolo contendere to an offense may be ordered to pay restitution.
> . . .;
>
> (b)(1) Whether a trial court or a jury, the sentencing authority shall make a determination of actual economic loss caused to a victim by the offense.

. . . .

> (3) When an offense has not resulted in bodily injury to a victim, a restitution order entered under this section may require that the defendant reimburse the victim for income lost by the victim as a result of the offense.
>
> (4)(A) The determination of the amount of loss is a factual question to be decided by the preponderance of the evidence presented to the sentencing authority during the sentencing phase of a trial.
>
> (B) The amount of loss may be decided by agreement between a defendant and the victim represented by the prosecuting attorney.
> . . .;
>
> (c)(1) As used in this section and in any provision of law relating to restitution, "victim" means any person, partnership, corporation, or governmental entity or agency that suffers property damage or loss, monetary expense, or physical injury or death as a direct or indirect result of the defendant's offense or criminal episode.

In the case before us, there was no formal restitution hearing. In fact, there was no evidence presented to the trier of fact—the circuit judge—save for his own unsupported assertion that the resetting of the trial resulted in "at least" a $4000 loss to the county. Mr. Morris clearly challenged the restitution component of his sanction; however, the State did not come forward with any evidence.

It is the job of the judiciary of this state to make sure that every Arkansas citizen receives due process of law before he or she is deprived of liberty or property. I cannot agree that Mr. Morris received due process in this case with regard to whatever part of the $4000 sanction that the circuit judge ascribed to restitution. Accordingly, on the record before us, the most that Mr. Morris could receive as a sanction is $500. I therefore respectfully dissent.

*Terrence Cain* and *Jimmy C. Morris, Jr.*, (pro se), for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Priest*, Ass't Att'y Gen., for appellee.